537 A.2d 823

James MOROSETTI, George Silvat, Robert Polis, Robert Neal, Edward Schmude, and William D. Wilson, Individually and on Behalf of Themselves and All Others Similarly Situated, Appellees,

v.

The LOUISIANA LAND AND EXPLORATION COMPANY, and H M Copper, Inc., Formerly Hussey Metals, Inc., Appellants,

**and**

James MOROSETTI, George Silvat, Robert Polis, Robert Neal, Edward Schmude, and William D. Wilson, Individually and on Behalf of All Others Similarly Situated, Appellants,

v.

The LOUISIANA LAND AND EXPLORATION COMPANY, and H M Copper, Inc., Formerly Hussey Metals Inc., Appellees.

Superior Court of Pennsylvania.

Argued June 18, 1987.

Filed Dec. 31, 1987.

Reargument Denied Feb. 18, 1988.

Edwin J. Strassburger, Pittsburgh, for appellants (at 1547) and appellees (at 1580).

Thomas H.M. Hough, Pittsburgh, for appellees (at 1547) and appellants (at 1580).

Before ROWLEY, JOHNSON and MONTGOMERY JJ.

MONTGOMERY, Judge:

The two appeals in this case arise from a judgment of the lower court which ordered that the Plaintiffs and the class members they represented were entitled to severance pay from the Defendants. The Plaintiffs and other class members were former salaried employees of the Defendants, and the Plaintiffs' claims were based upon an alleged severance pay policy of the Defendants. The case was tried before a jury, but at the conclusion of the presentation of all evidence, the lower court directed a verdict in favor of the Plaintiffs on the issue of both liability and damages. The verdict awarded severance pay to each member of the

Plaintiff class, in the amount of one week of pay for each year of service, for up to a maximum of twelve (12) weeks.

Following the denial of post-trial motions, the Defendants filed an appeal to our Court, at No. 01547 Pittsburgh, 1986, asserting that the lower court erred on several grounds in granting the claim for severance pay benefits. The Plaintiffs subsequently filed a cross-appeal, at No. 01580 Pittsburgh, 1986, urging that the lower court should have determined that they were entitled to a maximum of twenty-six (26) weeks of severance pay, rather than twelve (12) weeks. Further, the Plaintiffs questioned the rate of weekly pay awarded, and contended that the lower court should have also awarded them reasonable attorney fees against the Defendants.

The facts of the case are set forth accurately in the Opinion of the lower court. In brief, the Plaintiffs and the class they represent were former salaried employees of the Defendants until the Defendants sold various assets and facilities to a group headed by a former officer and management official of one of the Defendants. This sale occurred in May, 1984. All of the Plaintiffs and those in the class they represent were hired by the new owners, and in essence, continued to perform job functions such as those which each had performed during his or her prior employment with the Defendants.

During their time of employment by the Defendants, none of those in the Plaintiff class was represented by a labor organization, and none was employed pursuant to the terms of a collectively bargained labor agreement, nor any other written contract of employment. However, the Defendants had for many years maintained various employment policies which were applied to salaried employees prior to the sale. Such policies were generally known to such employees, and were maintained in written form by the Defendants, in their personnel office, with copies sent to various individuals with supervisory authority over the employees in the Plaintiff class. A severance pay program or

policy had been maintained by Defendants for several years prior to the asset and facility sale.

With this brief recitation of the general factual background of the case, we shall address the issues raised in these appeals. Each appeal will be examined separately.

### Appeal of the Defendants
### (No. 01574 Pittsburgh, 1986)

The initial contention raised by the Defendant employers in this case is that the Plaintiffs and other class members had no right to receive a severance benefit because the policy of pension payments was never disseminated to employees. The Defendants maintain that because the policy of paying severance payments to employees was never directly published to employees, there was no meeting of the minds on such a policy, and therefore no contractual obligation by the employers. We find no merit in that argument.

■ The employers' policy of paying severance benefits to employees had been in existence for many years, apparently since the early 1970's. It was well-known that salaried employees, like those in the Plaintiff class, had received severance payments in the past when their employment relationship with the employer, or its related entities, was terminated. While some employees may have had some misconceptions as to some details of the severance pay benefit, almost all of them were aware that a right to severance payments existed as a company policy. The employment policy manual which set forth the severance pay formula was available for review in the personnel office, or at the work station of various supervisors, in the event that any employee had a question about the severance pay plan, or any other employee benefit. The evidence clearly established that despite the lack of specific publication of the fact by Defendants, the existence of a severance pay entitlement was a matter of wide knowledge among employees entitled to receive that benefit.

In these circumstances, we reject the Defendants' assertion that the employees in the Plaintiff class had no right to severance on the basis that the terms of the severance pay policy were not disseminated to them, or that there was no meeting of the minds concerning the subject. Both of the parties have addressed numerous case precedents to our attention, and the lower court opinion has also noted a number of case precedents on the point of an entitlement of an employee to severance pay or other fringe benefits, in the absence of a written contract providing for such benefits. The Defendant employers have acknowledged the existence of legal precedent creating an obligation for the payment of such benefits by an employer, where the existence of the benefit entitlement was disseminated to employees. In the circumstances of this case, we find that there is ample evidence that there was broad awareness among the affected employees of the existence of the Defendants' policy of paying severance pay to qualified terminated employees. Information about this benefit had obviously been disseminated among them, and they understood that it was a part of the conditions of their employment by the Defendants. Accordingly, we reject the Defendants' first contention of error.

We next address the Defendants' claim that there was no severance of employment with regard to the employees in the Plaintiff class, because each became an employee of the new owners of the assets and facilities which were purchased from the Defendants. In support of this argument, Defendants point out that in the past, under the existing severance pay policy, some employees did not receive severance pay when they were transferred from one employing entity to another as the ownership of facilities was transferred, or when there were transfers between related facilities owned by a single employing entity. Further, Defendants cite case precedent, from other jurisdictions, wherein severance pay was denied employees when their former employer sold their place of employment to a successor employer who immediately stepped in and continued the employment and all operations without any interruption in production. Upon

the factual record before us, we cannot agree that there was a lack of severance of employment in this case such as would disqualify those in the Plaintiff class from receiving severance pay.

■ While the employees involved in this case essentially continued to be employed at the same facilities where each had worked during his or her time of employment with the Defendants, the purchasers of the assets and facilities in this case hired such individuals as new employees. There was no consideration by the new employer, with regard to any benefit of employment whatsoever, based on the employees' prior employment by the Defendants. Moreover, the employees were offered a different fringe benefit package, which included the reduction or elimination of various benefits which had been paid by Defendants during their former employment. The evidence also showed that the agreement between the Defendants and the group which purchased the assets and facilities where the employees worked provided that the sellers would be responsible for any severance payments due. There was nothing in the Defendants' severance policy which arguably provided for a denial of severance benefit entitlement upon reemployment of its eligible salaried employees by another employer, even at the same facilities. The fact that the Defendants may have denied severance pay to other employees, in the past, in other circumstances, has virtually no impact upon the obligations of the Defendants to the employee class in the circumstances under examination in the instant litigation.

The employees involved in this case all presumably earned their severance pay benefit on the basis of their past service to the Defendants. Their subsequent new employment by a completely unrelated employer, even though it may have been at the same facilities where they worked in the past, did not operate to establish a basis for a denial of the severance pay entitlement which each had earned. There is no question that none remained as employees of the Defendants. Based upon all of the foregoing, we cannot agree with the claims of the Defendant that there

was no severance of employment such as to entitle the employees in the Plaintiff class to enjoy the benefits of the employers' severance pay policy.

The Defendants offer the closely related argument that their severance policy excluded a right to severance pay where an employee retained employment with a related entity following a sale of facilities. We have addressed this argument in the course of our analysis of the claim that no severance of employment occurred in this case. In essence, the Defendants failed to establish that there were any conditions on their severance pay policy which would be based upon employment by any other employer entity, whether related or not to the Defendants. The record in this case shows that retention of any employees was not required as a condition of the sale of the assets and facilities by the Defendants. The retention of any employees, like those in the Plaintiff class, was a matter of unrestricted discretion by the asset and facility purchasing group. That group was a new employer entity, and it did not hire all of the salaried employees formerly employed by the Defendants. The hiring of the employees involved in this case by the purchasers provided no basis for the Defendants to deny severance payments to such former employees. Therefore, we must also reject this defense argument.

Finally, we address a contention by the Defendants that the severance pay claims of the Plaintiffs must be denied because the severance policy of the business division where they were employed had never been approved after its revision in 1982, despite the fact that other policies of the Defendants called for such fringe benefit revisions to be approved or adopted by higher levels of management within the Defendants' organizational structures. It will suffice to merely point out that the revision of policy which occurred in 1982 was followed by the Defendants with regard to subsequent payments of severance pay to employees, prior to the 1984 sale of assets and facilities. Moreover, individuals who would have qualified for inclusion in the Plaintiff class, but for the fact that they were not employed after the

sale by the group which purchased the assets and facilities, received severance pay, despite the fact that the 1982 revision was not approved by higher levels of authority within the Defendants' organizational structure. Thus, it is evident that the alleged lack of approval for the policy revision provides no logical or legal basis for the denial of the severance pay awarded by the lower court to those in the Plaintiff class.

We have rejected all of the claims of error raised by the Defendants. Accordingly, with regard to their appeal, the judgment of the lower court is hereby affirmed.

### *Appeal of the Plaintiffs*
### (No. 01580 Pittsburgh, 1986)

In their cross-appeal, the Plaintiffs first maintain that each member of the class of former employees was entitled to receive one week of pay for each year of service up to a maximum of twenty-six (26) weeks, rather than twelve (12) weeks, as ordered by the lower court. In support of this contention, Plaintiffs point out evidence in the record to indicate that executives of the Defendants were engaged in discussions and had prepared documents regarding a possible change in the maximum number of weeks of severance pay which could be paid to employees. This contemplated increase was from twelve (12) to twenty-six (26) weeks. Further, Plaintiffs point out that one employee who was not retained by the group which purchased the assets and facilities was paid over twelve (12) weeks of severance.

■ We have reviewed the record evidence pertaining to this issue. From that review, we are convinced that the proposed change in the maximum number of weeks was never actually disseminated to employees. It appears that only the Defendants' personnel director and his secretary learned of this potential change prior to the sale. Moreover, there was evidence that there were various other maximum periods of severance payments contemplated, and that the twenty-six (26) week maximum was only intended to apply to employees who would not be rehired by any

other entity which operated such facilities after the sale. In any event, the only clear evidence regarding an established personnel policy which would have entitled the Plaintiffs to any severance benefits was the policy which had been contained in the personnel manual of the Defendants since at least 1982, and which had been consistently applied from that date until the time of the actual sale. It provided for a twelve (12) week maximum on severance pay benefits. We do not find that the lower court erred in determining that such established policy would have been the only basis upon which the Plaintiffs could claim any entitlement to severance pay. Thus, we reject the argument that the Plaintiffs had an entitlement to more than the maximum of twelve (12) weeks of severance payments awarded by the lower court.

■ Next, the Plaintiffs assert that the severance pay they received should have been based upon their "normal base rate", and not the rate which was in effect on the date of the asset and facility sale. Apparently, approximately one year prior to the sale, employees in the Plaintiff class experienced a ten percent (10%) pay cut. Their argument, in this regard, is that their severance should have been based upon a weekly pay amount which ignored the ten percent (10%) reduction.

It does not appear that there is any evidence that the ten percent (10%) reduction pay which was experienced by employees for a year or more prior to the sale was either temporary in nature, or that it was guaranteed to be of any fixed duration. Further, the record does not establish any basis to conclude that the pay each received as of the date of the sale would have been increased on any future date, or changed in any other way. While there was evidence that some employees who were not hired by the new owner group did receive severance pay based upon the rate for each employee which was in effect prior to the ten percent (10%) reduction which had taken place a year earlier, there was no indication that the severance pay policy of the Defendants provided for pay at a rate other than the final

one earned by any employee prior to severance. In essence, the Plaintiffs' rights in this case all evolved from the established severance pay policy of their employer. Differences in treatment afforded to others, not based upon that policy, provide no basis for awarding the Plaintiffs benefits in excess of those provided for in the personnel policies. Accordingly, we do not find merit in the assertion by the Plaintiffs that the lower court should have awarded them pay on the basis of their purported "base rate" weekly pay prior to the earlier pay reduction.

The Plaintiffs first asserted a claim of entitlement to legal fees in their Motion for Post–Trial Relief. In that regard they stated: "4. Plaintiffs intend to seek reasonable attorneys' fees from Defendants pursuant to the Act of July 14, 1961, P.L. 637, 43 P.S. Sections 260, et seq., as amended, particularly Section 260.9a (pocket part)." The lower court held that the matter of attorney fees was then premature, and inappropriate for consideration in connection with the other post-trial motions for relief.

■ We can discern no error in the lower court's refusal to consider the request for legal fees in light of the context in which it was presented in this case. While the Plaintiffs have submitted a request, on this appeal, that they be awarded attorney fees amounting to twenty percent (20%) of the verdict, our Court will not address any questions regarding their entitlement to such fees for the first time on this appeal. Rather, we shall remand this case to the lower court for consideration of any issues presented, assuming that the Plaintiffs elect to submit any fee request to the lower court in some appropriate manner, within thirty (30) days of the filing of this Opinion.

Thus, as to Plaintiffs' appeal, the Judgment of the lower court is affirmed, and this case is remanded for any further proceedings as may be appropriate, regarding any fee request which may be submitted by the Plaintiffs. Jurisdiction is not retained.