617 A.2d 55

**Daniel R. BERNSTEIN and Willy F. Groninger, Petitioners,**

v.

**COMMONWEALTH of Pennsylvania; the Honorable Robert Casey, Governor of the Commonwealth of Pennsylvania; the Executive Board of the Commonwealth of Pennsylvania; and Joseph L. Zazyczny, Secretary of Administration and of the Executive Board, Respondents.**

Commonwealth Court of Pennsylvania.

Argued Sept. 16, 1992.

Decided Nov. 6, 1992.

---

402

George Bristol, for petitioners.

Frank A. Fisher, Jr., Chief Counsel, for respondents.

Before CRAIG, President Judge, and DOYLE, COLINS, SMITH, PELLEGRINI, FRIEDMAN and KELLEY, JJ.

CRAIG, President Judge.

Petitioners Daniel Bernstein and Willy Groninger filed a petition for review addressed to our original jurisdiction seeking declaratory and injunctive relief against Governor Robert Casey, the Executive Board of the Commonwealth of Pennsylvania, and the Secretary of the board, Joseph Zazyczny. Under Pa.R.A.P. 1532(b), the petitioners now ask for summary relief against changes in retirees' health benefits unilaterally

placed in effect by the Commonwealth. This court denies the relief requested.

The relevant facts as revealed in the pleadings are as follows. Both petitioners are retired employees of the Department of Public Welfare.[1] The Commonwealth gave employee Bernstein a copy of a booklet entitled "Blue Cross Blue Shield Retired Employee Benefit Program Handbook, Revised June 1, 1981." The Commonwealth gave employee Groninger a copy of a booklet entitled "Commonwealth of Pennsylvania Employee Benefits Program."

Both booklets described the employees' right upon reaching age sixty-five to choose between the following health-care benefits:

I. Taking Medicare Part B and Blue Shield 65–Special, at a monthly rate which is currently $31.80 per person for the employee and the employee's spouse; or

II. Remaining in the Blue Shield portion of the "Basic Health Coverage," which the state pays in full.

When employee Bernstein reached age sixty-five he elected Option II. Employee Groninger retired in 1991 at the age of fifty-nine and had planned to select Option II when he reaches age sixty-five.

On January 8, 1992, the Executive Board adopted resolution # BD–91–347, which described the health care benefit program for retirees as the "Retired Employee Health Program," and included a revised handbook that outlined benefits for current and future retirees.

Employee Bernstein received an undated, unsigned letter sometime after January 8, 1992. The letter stated in pertinent part:

Effective July 1, 1992, the Retired Employees Health Program will *not* cover or pay for medical expenses which are covered by the Social Security Medicare Program. Because of this you will want to give serious consideration to enrolling in Part B of the Social Security Medicare Program or to

---

1. The petitioners will be referred to as "the employees" throughout this opinion.

acquire some other form of insurance to pay your medical expenses.

.     .     .     .     .

Until July 1, 1992, the Retired Employees Health Program will continue to provide the full range of coverage. After July 1, 1992, the Retired Employees Health Program will not pay for medical expenses that are covered under Part B. of the Social Security Medicare Program.

Employee Groninger, after his retirement, received a booklet entitled "Retired Employee Health Plan Handbook for Non–Medicare Eligible Retirees." The booklet indicated that

Retired Employees and dependents who are eligible for medicare Part B must enroll in Medicare Part B upon becoming eligible to have payment made for benefits covered under medicare.

The retired employee health plan does not cover or pay benefits covered under the Social Security Medicare Program.

The new handbook does not offer retired eligible employees a choice of options and apparently removed Option II health care coverage as an option for eligible retirees. As indicated above, the Commonwealth had given both employees benefit handbooks before the effective date of the resolution, July 1, 1992, that gave them a choice of health benefit plans.

The employees contend that the Executive Board's adoption of Resolution # BD–91–347 was the basis for the Commonwealth's deletion of Option II. The employees assert that the resolution and the change in policy which formerly permitted an eligible retiree to make a selection of plans violates statutory provisions, specifically 71 Pa.C.S. § 5905(c.1), (f) and § 5907 and Article I, Section 10 of the United States Constitution and Article I, Section 17 of the Pennsylvania Constitution which prohibit the impairment of the obligation of contracts.

In their petition for review the employees seek (1) a declaration that the respondents' recision of the employees' right to select a health care plan violates the United States and Pennsylvania Constitutions, (2) reimbursement for any

amounts paid for Medicare Part B as a result of the change, (3) a permanent injunction preventing the respondents from any further changes in the health plan, and (4) attorney's fees and costs.

Under Pa.R.A.P. 1532(b) this court may grant a motion for summary relief only when the pleaded facts, reviewed in the light most favorable to the non-moving party, clearly support the moving party's position as a matter of law. *Castle v. Pennsylvania Board of Probation and Parole,* 123 Pa. Commonwealth Ct. 570, 554 A.2d 625 (1989).

The pivotal issue in this case is whether provisions in the Retirement Code, or the employee handbooks the employees received before the effective date of the 1992 resolution, gave them a statutory or contractual right to continue to participate in the Option II plan that employee Bernstein selected when he became eligible for the benefit and which was an option at the time employee Groninger was employed by the Commonwealth.

The employees argue that the State Employees' Retirement Code, 71 Pa.C.S. §§ 5101–5956, establishes a statutory right to continued coverage under Option II. The employees, in asserting that they have a contractual right to continue to participate in Option II, rely upon the terms of the handbooks they received from the Commonwealth to support their contention that the offer of a choice of plans in the handbooks constitutes a "public retirement benefit" upon which the employees relied.

The employees rely upon the following statutory language in 71 Pa.C.S. § 5905:

**(c.1) Termination of service.**—The board shall, in the case of any member terminating service who is entitled to an annuity, advise such member in writing of any benefits to which he may be entitled under the provisions of this part and shall have the member prepare, on or before the date of termination of State service, one of the following three

forms, a copy of which shall be given to the member and the original of which shall be filed with the board:

·        ·        ·        ·        ·

(3) an application for an immediate annuity and, if he desires:

(i) an election to convert his medical, major medical and hospitalization insurance coverage to the plan for State annuitants....

Section 5905(h) provides:

**(h) Medical insurance coverage.**—Upon receipt of the election by an eligible member to convert his medical, major medical, and hospitalization insurance coverage to the plan for State annuitants, *the board shall notify the insurance carrier of such election and shall deduct the appropriate annual charges in equal monthly installments.* Such deductions shall be transmitted to the designated fiscal officer of the Commonwealth having jurisdiction over the payment of such group charges on behalf of the annuitant. (Emphasis added.)

Also, section 5907(f) states that

Each member who terminates State service shall execute on or before the date of termination of service the appropriate application, duly attested by the member ... electing to:

·        ·        ·        ·        ·

(3) receive an immediate annuity, and may, (i) if eligible, elect to convert his medical, major medical, and hospitalization coverage to the plan for State annuitants.

■      The employees argue that the legislature, through its adoption of the quoted provisions of the Code, intended to provide retired state employees with the option to retain the medical coverage they had as employees, paid in full by the Commonwealth, as formerly provided under Option II, or to convert their coverage to another plan the state has designed for annuitants.

However, this court interprets the language to mean that, upon termination of employment, an eligible retired employee may (1) seek his or her own medical coverage, or (2) partici-

pate in the health coverage plan the state has selected for annuitants.

■ The employees argue that the legislature, by using the phrase "state plan" intended to incorporate by reference the plan or plans that the state selected (1) at the time an employee begins to work for the state or (2) at some time during a state employee's tenure with the state.

■ When the legislature enacted the Retirement Code, it adopted specific provisions for determining the amounts of annuities payable to vested and retired employees. In accordance with those provisions the state knows before an annuitant is eligible to receive his annuity the amounts that the state must pay to an annuitant. However, in contrast to the certainty involved in calculations of annuities, health care costs do not remain constant. Thus, the legislature's omission of specific provisions concerning health care coverage is reasonable in light of the practical realities relating to the nature of health care provision. The legislature's broad reference to a "plan" for state annuitants reflects the uncertainty and fluctuation involved in having to provide for health care. The legislature, apparently in recognition of that fact, elected not to commit the state to a particular plan for the provision of health care to annuitants.

The statute provides only that retired employees are entitled to participate in the state's plan, if, upon retirement, they elect to do so. That language does not provide for a specific plan. Rather, the language indicates that the legislature intended to provide the state with flexibility in determining the extent to which it will provide medical coverage.

Additionally, the emphasized text of subsection 5905(h), which instructs the board to notify the state's insurance carrier of an eligible retiree's selection, i.e., to participate in the state plan, and to deduct "the *appropriate* annual charges," (emphasis added) supports this court's conclusion that the legislature did not intend to commit the state to a particular health plan.

■ The employees also argue that, under *American Federation of State, County and Municipal Employees v. Commonwealth,* 80 Pa. Commonwealth Ct. 611, 472 A.2d 746 (1984), the medical coverage to which the handbooks refer is a public retirement benefit, and thus deferred compensation to which the employees have a contractual right. The employees assert that the conferral of a choice in the the employee handbooks created a public retirement benefit for which the employees worked and upon which they relied in their work, in anticipation of receiving the elected benefit upon their retirement.

The *AFSCME* case involved an amendment to the Retirement Code that required employees who were already members of the retirement system, i.e., not new employees, to contribute an additional 1¼% of their pay to the retirement system. This court held that the amendment constitutionally impaired the contract rights of employees whose retirement rights had completely vested and those employees whose rights had not completely vested. The court concluded that the amendment adversely affected those whose rights had vested by increasing the amount of employee contribution without increasing the benefit, and that the amendment adversely affected employees whose rights had not vested because it subjected the employees to a "net detriment," which the court described as resulting when a statute implements a unilateral detrimental change in the terms of employment after an employee begins working.

In *AFSCME* the earlier version of the Code, the one in force at the time the aggrieved employees had either begun working for the state or had vested, mandated a specific contribution amount, 5%, but the legislature attempted to alter the contribution by increasing it by 1¼%. As indicated in our discussion above, in this case, the legislature made no specific provision regarding the extent to which the Commonwealth was required to contribute to retired employees' health plans nor did the legislature direct the Commonwealth to adopt a specific plan. The lack of specificity with regard to health care provision distinguishes the *AFSCME* case from this one

and supports our conclusion that the legislature intended the Executive Board to determine the extent to which the Commonwealth should be obligated to contribute to such benefits.

The employees also rely upon the state's Retired Employee Benefit Handbook and the Commonwealth of Pennsylvania Benefit Program Handbook, which described the right of retired employees to elect Option I or II when they became eligible for retirees' health care coverage.

The employees aver that the offer in the handbooks of a selection of plans—specifically the offer of fully paid state coverage—induced them to continue working for the state. However, the Executive Board has issued resolutions since 1966 regarding the Commonwealth's share of the cost of an annuitant's health care plan. The Executive Board did not issue a resolution authorizing the Commonwealth to pay the entire costs of an annuitant's Retired Employee's Health Plan until 1976. Employee Bernstein began employment with the state in 1950. Employee Groninger began state employment in 1965. Thus, as the Commonwealth points out, when the employees began working for the state, the Commonwealth did not have a plan providing for full payment by the state. Employee Bernstein worked for the state for sixteen years and employee Groninger worked for the state eleven years before the Commonwealth began to pay the entire cost of retired employees' health care plans.

The Commonwealth asserts that the employee handbooks do not establish a contractual relationship between the state and the employees. The Commonwealth analogizes the petitioners' claim in this case to cases involving at-will employees' claims that an employee handbook established a property interest in, or contract right to, continued employment.

In *Pivarnik v. Commonwealth, Department of Transportation*, 82 Pa.Commonwealth Ct. 42, 474 A.2d 732 (1984), this court concluded that public employees can gain an "enforceable expectation of continued employment" in their jobs only through legislative action, and that

"an employee handbook issued by a Commonwealth agency ... is not a legislative action ... and cannot be considered a

contract guaranteeing a property right in employment unless the legislature has so provided." *Id.*, at 45–46, 474 A.2d at 734.

██ The Commonwealth argues that there is no legislative action that enabled the Commonwealth to enter into an employment contract guaranteeing retirees the right to the specific health benefits they formerly enjoyed. As indicated in our discussion above, this court agrees that the General Assembly has not adopted any legislation that establishes a contractual obligation on the part of the Commonwealth to provide a specific health care plan to retired employees.

The other decisions upon which the Commonwealth relies are persuasive, even though they involve private rather than public employers. In *Richardson v. Charles Cole Memorial Hospital*, 320 Pa. Superior Ct. 106, 466 A.2d 1084 (1983), the Pennsylvania Superior court concluded that an employer's unilateral act of publishing its policies did not amount to the "meeting of the minds" required for a contract. The terms of the handbook were not bargained for by the parties and any benefits conferred by it were mere gratuities. In fact, the handbook was unilaterally revised by appellant twice during appellee's employment. *Id.*, at 108–9, 466 A.2d at 1085 (Citation omitted.)

Neither the employees' pleadings nor the exhibits containing reproduced pages of the handbooks upon which they rely support a finding that the Commonwealth intended to enter a contractual relationship with the employees for a particular health plan. The Executive Board resolutions attached as exhibits to the pleadings establish that the Commonwealth's contribution to retirees' health plans varied over the course of the employees' tenure with the Commonwealth. Thus, the employees received no assurance that the Commonwealth ever intended to enter a contract with the employees for a particular health care plan.

In *Martin v. Capital Cities Media*, 354 Pa.Superior Ct. 199, 511 A.2d 830 (1986), the court stated that employees may regard the terms contained in a handbook as creating a legally

binding relationship only when the handbook, or an employer's representation of the handbook, clearly indicates that the terms of the handbook have such effect.

In a case in which salaried employees sought severance pay, the employees claimed that a contract existed between them and their former employer. *Morosetti v. Louisiana Land and Exploration Co.*, 371 Pa.Superior Ct. 68, 537 A.2d 823 (1987), *reversed,* 522 Pa. 492, 564 A.2d 151 (1989). The Superior Court concluded that a contract existed; however, the Pennsylvania Supreme Court reversed, noting that

> [O]ne cannot suppose, believe, suspect, imagine or hope that an offer has been made. An offer must be intentional, definite in its terms and communicated otherwise the minds cannot meet. (Footnotes omitted.)

The court concluded:

> A company may indeed have a policy upon which they intend to act, given certain circumstances or events, but unless they communicate that policy as part of a definite offer of employment they are free to change as events require them. 522 Pa. at 494, 564 A.2d at 153.

■ The petitioners in this case have not pleaded any facts alleging that the Commonwealth intended to be bound by the handbooks. The offer in the handbooks of two options does not establish an intent on the part of the Commonwealth to be bound by the terms of the handbooks. Furthermore, although the Commonwealth may have adopted a policy in 1976 to pay the full cost of retired employees' health care plans under Option II, neither the pleaded facts nor the attached exhibits indicate that the Commonwealth ever communicated that policy as a "definite" offer to the employees. As the court indicated in *Morosetti,* when an employer has not made a definite offer, an employer is free to change its policy as conditions require.

This court concludes that neither the statutory provisions nor the employee handbook establish a statutory or contractual right which would require the Commonwealth to continue to

provide the same choice of health care options to retired employees that it has provided in the past.

Accordingly, the employees' request for summary relief is denied.

## ORDER

NOW, November 6, 1992, the petitioners' request for summary relief is denied.