NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-3782
_____

DAVID K. LORD,

Appellant

v.

ERIE COUNTY
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 1-08-cv-00213)
District Judge:  Honorable Sean J. McLaughlin
_____

Argued April 17, 2012
Before:  SCIRICA, AMBRO and FISHER, *Circuit Judges*.

(Filed: April 24, 2012)

Tibor R. Solymosi (Argued)
Segel & Solymosi
818 State Street
Erie, PA  16501
        *Counsel for Appellant*

Patrick M. Carey (Argued)
Marshall, Dennehey, Warner, Coleman & Goggin
717 State Street, Suite 701
Erie, PA  16501
        *Counsel for Appellee*

_____

OPINION OF THE COURT

_____

FISHER, *Circuit Judge*.

David K. Lord appeals from the orders of the U.S. District Court for the Western District of Pennsylvania dismissing various constitutional and contractual claims. For the reasons stated below, we will affirm.

I.

We write principally for the parties, who are familiar with the factual context and legal history of this case. Therefore, we will set forth only those facts necessary to our analysis.

David K. Lord was employed by the Erie County Department of Corrections ("the County") at the Erie County Prison between 1992 and 2007. In 2005, Lord became friends with Teo Underhill, and they moved into an apartment together in Erie, Pennsylvania, shortly thereafter. In January of 2006, while they were sharing an apartment, Underhill was arrested for misdemeanor simple assault and disorderly conduct. He was found guilty and sentenced to 48 hours of incarceration at the Erie County Prison, followed by 21 months' probation.

After Underhill was released from prison and began his probation, Lord spoke with Prison Warden James Veshecco and Deputy Warden James Senyo about their relationship. At this time, Lord and Underhill were no longer roommates. Veshecco and Senyo both instructed Lord to stay away from Underhill, in accordance with Erie County

Department of Corrections "Policies and Procedures," which set forth an anti-fraternization policy as provided in the following paragraphs:

25. Unauthorized Communications

  c. Employees are prohibited from fraternizing or communicating (by telephone, letter, etc.) with inmates anywhere off prison property. (Note: An employee shall apply this same policy to ex-inmates serving parole or probation sentences).

27. Fraternization with Inmates

  a. Employees shall not develop a personal relationship with inmates during, or for at least one year after, the inmate's incarceration. (Examples of personal relationships include romance, co-habitation, business dealings or the provision of legal assistance).

  b. Fraternization exposes the employee, other staff, inmates and the public to increased risk of security compromise or danger at the prison and in the community.

Lord disregarded their instructions. While Underhill was on probation, he and Lord spoke on the phone frequently, and saw each other in person three or four times a week. Lord was aware that Underhill was still on probation during this time. In August of 2007, a fellow Correctional Officer, Scott Gorring, saw Lord and Underhill together at a local bar and departing in the same car. Officer Gorring prepared a report detailing this encounter and submitted it to Veshecco. On August 27, 2007, Lord met with Veshecco and other prison officials to discuss Gorring's report. Lord confirmed the contents, and Veshecco requested his resignation; when Lord refused to resign, Veshecco terminated his employment. The letter of termination listed four reasons for discharge:

(1) insubordination; (2) failing to follow orders and directions; (3) conduct unbecoming an employee; and (4) fraternization with inmates.

Lord filed a complaint in the Court of Common Pleas of Erie County on May 7, 2008, alleging claims under 42 U.S.C. § 1983 that (1) the anti-fraternization policy violated his First Amendment associational rights, and (2) his discharge violated his right to procedural due process, and alleging a claim under Pennsylvania law that (3) the termination breached an implied contract of employment. Erie County removed to the U.S. District Court for the Western District of Pennsylvania on July 25, 2008, and moved to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Adopting the report and recommendation of the Magistrate Judge, on January 5, 2010, the District Court granted the motion to dismiss as to Lord's breach of contract and procedural due process claims, but denied it as to Lord's First Amendment claim.

After depositions were taken of Lord, Underhill, and various prison officials, Erie County moved for summary judgment on Lord's First Amendment claim. On September 8, 2011, the District Court granted the motion on the grounds that no record evidence existed to support an inference that Lord and Underhill had a constitutionally protected relationship, and consequently, that Lord's First Amendment claims failed as a matter of law. Lord filed a timely appeal.

## II.

The County removed the suit against it pursuant to 28 U.S.C. § 1441(a). The District Court had proper jurisdiction over Lord's § 1983 claims pursuant to 28 U.S.C.

§ 1331, and exercised supplemental jurisdiction over Lord's state law claim pursuant to 28 U.S.C. § 1367(a). This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

We review the District Court's dismissal of a claim under Rule 12(b)(6) de novo. *Phillips v. County of Allegheny*, 515 F.3d 224, 230 (3d Cir. 2008). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quotation marks and citation omitted); *see* Fed. R. Civ. P. 12(b)(6). We also review the District Court's grant of summary judgment de novo, applying the same standard as the District Court. *Blair v. Scott Specialty Gases*, 283 F.3d 595, 602-03 (3d Cir. 2002). Summary judgment is appropriate where, making all reasonable inferences in favor of the nonmoving party, there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Horn v. Thoratec Corp.*, 376 F.3d 163, 166 (3d Cir. 2004) (citations omitted).

### III.

Lord first challenges the District Court's dismissal of his § 1983 First Amendment claim on summary judgment. He contends that his relationship with Underhill was entitled to constitutional protection, and, therefore, that the District Court erred in determining that Lord could not assert a violation of a constitutionally protected interest under § 1983. *See Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000) ("The first step in evaluating a section 1983 claim is to . . . determine 'whether the plaintiff has alleged a

5

deprivation of a constitutional right at all.'" (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998)). We are not persuaded.

The First Amendment's guarantee of "freedom of association" extends to an individual's "choices to enter into and maintain certain intimate human relationships." *Roberts v. United States Jaycees*, 468 U.S. 609, 617-18 (1984). However, not every personal relationship falls within the ambit of the First Amendment. *See Rode v. Dellarciprete*, 845 F.2d 1192, 1204 (3d Cir. 1988) (discussing factors to be considered in determining whether a relationship is afforded constitutional protection). Rather, only personal relationships characterized by a high degree of selectivity and intimacy, "bound by blood," or devoted towards the "creation and sustenance of a family" may garner First Amendment protection. *Id.* at 1205 (citations omitted). Accordingly, we have declined to recognize as protected mere friendships that are "not based on the 'creation and sustenance of a family.'" *Id.* (holding relationship between plaintiff and brother-in-law not protected by First Amendment) (quoting *Roberts*, 468 U.S. at 619); *Gruenke v. Seip*, 225 F.3d 290, 307-08 (3d Cir. 2000) (holding that swimmer's social interactions with her swim team did not merit First Amendment protection).

We agree with the District Court that the First Amendment has nothing to offer Lord in this case because he was merely friends with Underhill. During his deposition, Lord never referred to Underhill as anything other than his friend; the record indicates that their relationship only extended to socializing, talking on the phone, and previously co-habiting an apartment. Nor is there any evidence that this relationship was

6

characterized by the sharing of "a special community of thoughts, experiences, and beliefs[, as well as] distinctively personal aspects of one's life." *Roberts*, 468 U.S. at 619-20. Indeed, if the relationship between a plaintiff and her brother-in-law does not merit First Amendment protection, we cannot see how this one does. *See Rode*, 845 F.2d at 1204-05. Consequently, there is no basis from which a reasonable jury could infer that Lord's constitutional rights were burdened by the prison's anti-fraternization policy,[1] and the claim was properly dismissed.

Second, Lord contends that the District Court erred in dismissing his procedural due process claim. To establish a procedural due process claim based on his discharge from employment, Lord must demonstrate that he has been deprived of a constitutionally-protected property interest in his job. *See Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). We agree with the District Court that Lord's complaint failed to do so.

"To have a property interest in a job, . . . a person must have more than a unilateral expectation of continued employment; rather, []he must have a legitimate entitlement to such continued employment" under state law. *Elmore v. Cleary*, 399 F.3d 279, 282 (3d

---

[1] It is not clear from the record, or Lord's brief on appeal, whether Lord asserted a facial challenge to the anti-fraternization policy, or just an as-applied challenge. "Facial challenges are disfavored," *United States v. Mitchell*, 652 F.3d 387, 405 (3d Cir. 2011), particularly where a plaintiff "nowhere even obliquely suggests that the constitutionality of the regulation at issue should be assessed against a broader backdrop." *United States v. Marcavage*, 609 F.3d 264, 274 (3d Cir. 2010). However, we need not determine the precise contours of Lord's challenge because, to the extent that he asserts a facial attack, it clearly fails: as is made apparent by the record, the policy is neither "unconstitutional in all of its applications," *United States v. Salerno*, 481 U.S. 739, 745 (1987), nor overbroad. *Marcavage*, 609 F.3d at 274.

7

Cir. 2005) (citations omitted). In Pennsylvania, a public employee is generally considered an "employee-at-will," and therefore has no legitimate entitlement to continued employment in the absence of a contractual or statutory term providing otherwise. *Id.*; *Pipkin v. Pennsylvania State Police*, 693 A.2d 190, 191-92 (Pa. 1997). Critically, a legitimate entitlement to continued employment cannot be premised on employee policies or disciplinary procedures alone. *Elmore*, 399 F.3d at 282-83 (rejecting employee's argument that personnel handbook providing that she could only be fired for "just cause" created property interest in her job); *see Miller v. Clinton Cnty.*, 544 F.3d 542, 552-53 (3d Cir. 2008) (rejecting "argument that personnel policy handbook conferred employment that could be only terminated for just-cause"). Rather, "terms in an employee handbook are binding only when either the handbook itself or the employer's representation of it *clearly indicate* that the handbook is to have a binding effect." *Imdorf v. Pub. Sch. Emps. Ret. Sys.*, 638 A.2d 502, 505 (Pa. Commw. Ct. 1994) (emphasis added) (citing *Bernstein v. Commonwealth*, 617 A.2d 55, 60-61 (Pa. Commw. Ct. 1992)); *see DeFrank v. Greene Cnty.*, 412 A.2d 663, 665-66 (Pa. Commw. Ct. 1981) (applying equitable estoppel in finding that employer was contractually bound to provide pre-termination hearings based on representation that policy was binding, and holding that failure to do so deprived plaintiff of due process interest in job).

None of the documents identified in Lord's complaint (including Erie County Prison's employee handbook provisions and policy statements), nor its "representation" of them, supports an inference that Lord had a property interest in his job. The Erie

8

County Government Employee Handbook expressly states that it "*does not constitute a contract* between the County and [the employee] or between the County and any other employee or group of employees" (emphasis added). The Handbook also provides that the County "has unilateral discretion to add, delete or modify statements in this handbook." Similarly, the Erie County Personnel Code (which was not referenced in Lord's complaint, but is incorporated by reference into the Handbook) explicitly allows for alteration of disciplinary procedures depending on the severity of an infraction. And the Erie County Department of Corrections "Employee Disciplinary Procedure" states that violating a "major safety rule" or practice will result in disciplinary action, which *may* include "immediate termination" of employment. In sum, none of the documents proffered by Lord has the legal significance which Lord attributes to them. Therefore, Lord cannot assert a legitimate entitlement to continued employment, and we affirm the dismissal of his claim accordingly.

Lord next argues that the District Court erred in dismissing his claim for breach of implied contract when Erie County terminated his employment. To state a claim for breach of contract in Pennsylvania, Lord "must establish: (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages." *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003) (quoting *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)). In Pennsylvania, a public employee is presumed to be an "employee-at-will." *Elmore*, 399 F.3d at 282. "In order to rebut the presumption of at-will employment, a party must

9

establish one of the following: (1) an agreement for a definite duration; (2) an agreement specifying that the employee will be discharged for just cause only; (3) sufficient additional consideration; or (4) an applicable recognized public policy exception." *Luteran v. Loral Fairchild Corp.*, 688 A.2d 211, 214 (Pa. Super. Ct. 1997).

Here, there is simply no evidence that any of the materials identified by Lord in his complaint gave rise to an implied contract of employment. First, there was no agreement of employment for a definite duration, and Lord did not allege one in his complaint. Second, there is no agreement indicating that Lord would be discharged for "just cause" only. Although the Handbook and other policies provide for certain disciplinary procedures, they are not binding: the Handbook expressly states that it "does not constitute a contract between the County and [the employee] or between the County and any other employee or group of employees" and the disciplinary procedures were subject to modification. *See id.* at 215 (finding handbook non-binding). Third, Lord made no allegations of "sufficient additional consideration," and the complaint did not indicate any. Fourth, Lord failed to allege any public policy exception. Lord's conclusory statements to the contrary are to no avail because Rule 12(b)(6) requires a *showing* of entitlement to relief. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 1999). In sum, there is simply no fact from which an implied contract could be inferred, and therefore the District Court correctly dismissed that claim.

IV.

For the foregoing reasons, we will affirm the orders of the District Court.

10