564 A.2d 151

James MOROSETTI, George Silvat, Robert Polis, Robert Neal,
Edward Schmude, and William D. Wilson, individually and on
behalf of themselves and all others similarly situated, Appel-
lants at No. 66,

v.

The LOUISIANA LAND AND EXPLORATION COMPANY,
and H.M. Copper, Inc., formerly Hussey Metals, Inc.,
Appellants at No. 65.

Supreme Court of Pennsylvania.

Argued March 7, 1989.

Decided Sept. 15, 1989.

E.J. Strassburger, Strassburger, McKenna, Gutnick & Potter, Pittsburgh, Thomas H.M. Hough, Hough & Gleason, P.C., Poughkeepsie, for appellants.

Jeffrey I. Pasek, for Pa. Chamber of Business and Industry Amicus Curiae.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA and PAPADAKOS, JJ.

## OPINION

McDERMOTT, Justice.

The class action plaintiffs in this case were employees of the Hussey Company. The Hussey Company, a wholly owned subsidiary of the appellant, was sold in May 1984. When the sale was consummated, the employees were offered either new positions with the purchasers or up to a maximum of twenty-six weeks severance pay for each year of service. The class plaintiffs chose to accept employment with the purchasing company and now claim that they are entitled to the twenty-six weeks severance pay as well. The appellee contends that while there was indeed a severance

pay policy at their company, it was not communicated as an offer or inducement to accept or continue employment with their concern and therefore was not an enforceable contract.

The employees were granted a directed verdict at trial, and were sustained on appeal before the Superior Court. The trial judge directed verdict upon his view that there existed a "handbook" offer by the company for severance pay and therefore the requisite offer and acceptance of contract. We cannot agree that the evidence offered by the employees was sufficient to sustain that view. The company from time to time issued flyers outlining various benefits the company offered to employees such as health and life insurance, tuition credits, vacation, and the like. The company however never made known to their employees the policy for severance pay. They kept their policy in a manual for the use of their personnel manager for guidance as occasion arose. The employees could not say other than they believed the company had a policy. They did not know the policy because they were never told. They based their belief and supposition as to its terms upon what occurred when various employees were, from time to time, given severance pay. The amounts given were different with each employee, some more, some less, some none at all. The company never denied that they had a severance pay policy, but insist that its terms were not an inducement to employment because they did not solidify its terms into an offer for mutual or unilateral contract.

█ It is basic contract law that one cannot suppose, believe, suspect, imagine or hope that an offer has been made. An offer must be intentional, definite,[1] in its terms and communicated,[2] otherwise the minds cannot meet.[3] Nor

1. *Bethlehem Steel Corp. v. Litton Industries,* 321 Pa.Super. 357, 468 A.2d 748 (1983), aff'd. 507 Pa. 88, 488 A.2d 581 (1985). Restatement Second Contracts § 33.

2. *Commonwealth v. Prep,* 186 Pa.Super. 442, 142 A.2d 460 (1958).

3. *Restatement of Contracts, Second Topics 2–5,* §§ 18–70. *See also Commonwealth v. Monumental Properties,* 459 Pa. 450, 329 A.2d 812 (1974).

can one be bound because they are contemplating making an offer, or that they would or should have or that someday they might. An offer must define its terms, specify the thing offered and be an intention of the present or the future to be bound.

 A handbook distributed to employees as inducement for employment may be an offer and its acceptance a contract. The employees here, however, could not show, other than an internal consideration of policy for what might be given, if and when they announced a policy for all employees. It is not sufficient to show only that they had a policy. It must be shown that they intended to offer it as a binding contract. Nor can their intention be proved by bits and pieces of their policy given individual employees at different times under varying circumstances.

The employees in their evidence were able only to show that they believed there was a policy of severance pay. The only evidence was that in a company manual, which unlike other policies that were communicated to employees by flyers, there were procedures for severance the company followed from time to time. The employees materially differed in testimony on its terms. Some testified they felt, heard, expected, or were entitled. They all differed on the amount or term of service required for whatever severance pay might be available. In short, all the evidence offered could prove no more than that each employee had a different view and different expectation. The evidence at best was a general feeling that there was a severance pay policy.

Again, it is basic contract law that there must be more than a general awareness; there must be an intended, definite, specific offer before any offer can be accepted or any enforceable contract created. One cannot suppose that another made an offer, was willing to make an offer or intended sometime to do so. Minds, for contractual obligation, must meet upon definite, specific things.

The learned trial judge fell into error when he equated an uncommunicated personnel manual with a "handbook." The employees here however, could show no more than an

employer's internal consideration of a policy for what might be given when occasion arose. It is not sufficient to show they had a policy. It must be shown they offered it as binding terms of employment. A company may indeed have a policy upon which they intend to act, given certain circumstances or events, but unless they communicate that policy as part of a definite offer of employment they are free to change as events may require. *See Richardson v. Charles Cole Memorial Hospital,* 320 Pa.Super. 106, 466 A.2d 1084 (1983).

In reviewing the propriety of a directed verdict we accept as true, as must the trial judge, all facts and inferences tending to support the party against whom the motion has been made, rejecting all testimony and references to the contrary. *Jozsa v. Hottenstein,* 364 Pa.Super. 469, 528 A.2d 606 (1987). In this case the appellants against whom the verdict was directed are entitled to that consideration. In that light we reverse.

ZAPPALA, J., files a concurring opinion.

LARSEN, J., files a dissenting opinion.

ZAPPALA, Justice, concurring.

I join in the holding of the majority opinion that the uncommunicated policy of severance pay was not contractually binding upon the employer. I perceive an important distinction between the policy and an employer's handbook that is disseminated to the employees. Because this Court has not yet addressed the issue as to whether an employee handbook unilaterally issued by an employer constitutes part of an employee's contract of employment, the dicta in the majority's opinion may be construed prematurely as controlling.

The majority states that "A handbook distributed to employees as inducement for employment may be an offer and its acceptance a contract." (Majority slip opinion at 152). Having concluded that the uncommunicated personnel manual could not be equated with a handbook, the

majority's statement is of no precedential value. I write then only to emphasize that the issue of the effect of the distribution an employee handbook has not been resolved by this Court and that I would reserve discussion until the matter is squarely before us.

LARSEN, Justice, dissenting.

I dissent. The facts of this case as found by the trial court are as follows. Copper Range Company (CRC) was a wholly-owned subsidiary of the Louisiana Land and Exploration Company (LLE) engaged in the mining and refining of copper, and the production and sale of copper products. Hussey Metals Division (Hussey Division) was an unincorporated division of CRC. Hussey Division operated plant facilities in Leetsdale, Pennsylvania and Eminence, Kentucky as well as sales offices and warehouses in Pennsylvania (Philadelphia) New Jersey, New York, Illinois, Ohio, Missouri and North Carolina.

Although the Mineral Division of LLE (of which CRC was a part) provided certain company-wide benefits for salaried non-union employees, it did not have a policy for severance benefits. CRC instituted a severance pay policy in or about August of 1970 which provided for one week of base pay for each year of service, up to a maximum of twenty-six weeks. This policy was revised as it related to Hussey Division on September 29, 1982, by R.D. Allen, its President and General Manager, to allow one week of base pay for each year of service up to a maximum of 12 weeks. Severance was paid in accordance with the 1982 revision in 1982 and 1983.

In December of 1983, Hussey Division was incorporated as a wholly-owned subsidiary of LLE under the name of Hussey Metals, Inc. (Hussey Inc.) At this time, LLE attempted to sell Hussey Inc. as an ongoing concern, but was unsuccessful. On May 14, 1984, several representatives of LLE appeared at the Leetsdale facility to announce the closing of the plant—its last day of operation would be Friday, May 18, 1984. On that day, a memorandum pre-

pared by LLE was distributed to all of the salaried non-union employees of Hussey Inc. stating that the formula and timing for severance pay would be communicated to them on or before June 1, 1984. Between the Leetsdale plant closing on May 18, 1984, through May 27, 1984, a few employees remained in the office to answer the phone and a skeletal crew provided security. The Eminence plant continued operations without interruption.

During the weekend of May 19–20, R.D. Allen, was able to put together a group of investors to purchase the assets of Leetsdale and Eminence facilities. The new company was named Hussey Copper Ltd. This company, headed by Mr. Allen (himself a former official of Hussey Inc.) began to hire former employees of the Leetsdale facility on May 27, 1984. On May 30, 1984, Mr. Allen, upon the request of LLE, sent that company a list of all former employees of Hussey Inc. who were not employed by Hussey Copper Ltd. On June 1, 1984, (post-severance) LLE announced a change in its severance policy. This change provided:

> Pursuant to our earlier memo to you, the following has been established as the severance policy for salaried employees as a result of the closing of the Leetsdale facility:
>
> *Severance*
>
> One week of base pay for each full year of service with a minimum of two weeks and a maximum payment of twenty-six weeks paid in a lump sum to all former employees (with at least six (6) months of service) who were not employed or made an offer of employment as of June 1, 1984.
>
> Your severance check is attached.

Reproduced Record at p. 376, [Plaintiff's Exhibit 13]. The memorandum, together with a severance pay check was sent to all employees on the list provided to LLE (those who did not obtain employment with Hussey Copper Ltd.). The former employees of Hussey Inc., employed at the Leetsdale facility by Hussey Copper Ltd., those who continued employment with the Eminence facility and personnel at the

various sales offices and warehouses did not receive the memorandum or severance pay.

The class plaintiffs herein, consisting of all salaried non-union employees of Hussey Inc., who accepted employment with Hussey Copper Ltd. and, thus, did not receive severance pay, brought a suit for breach of contract. A jury trial was held and at the close of all of the evidence the trial judge directed a verdict in favor of the class plaintiffs. The trial judge found that a contract offer for severance benefits was made and communicated to all salaried non-union employees since: 1) an employee handbook containing the same was distributed to several staff people at Hussey Inc. and was available to employees for reference concerning employment benefits; and 2) the salaried non-union employees were aware of the 1982 revised severance pay policy by word of mouth and by Hussey Inc.'s conduct in providing severance benefits to other salaried non-union employees. The trial court determined that this offer was freely subject to modification or revocation at any time during the term of employment but irrevocable once severance occurred. Thus, LLE's attempt to modify the policy on June 1, 1984, after severance had occurred, to exclude employees who accepted employment with Hussey Copper Ltd., was of no effect. The trial court awarded the class plaintiffs severance pay in the amount of one week base pay for every year of service up to a maximum of twelve weeks.

Both parties filed post trial motions with the lower court. The class plaintiffs disputed the severance pay formula used by the trial court that limited severance to a maximum of twelve weeks. LLE disputed the employees' right to any severance benefits. The trial judge denied post-verdict relief to both parties and the Superior Court affirmed. Both parties petitioned this court for review of the Superior Court order. We granted the cross appeals.

An important question of first impression is presented in this appeal: whether a provision for severance benefits set forth in an employee "handbook" creates an enforceable

contractual obligation between the employer and former "at will" employees.

The majority in its opinion would reverse the order of the Superior Court, upholding the trial court's directed verdict in favor of the class, because there was not sufficient evidence to sustain the view that there was "handbook" offer of severance benefits made and communicated to the employees. The majority claims that the "learned trial judge fell into error when he equated an uncommunicable personnel manual with a "handbook". Majority op. at p. 495. Instead, it insists that "the company from time to time issued flyers outlining various benefits the company offered to employees such as health and life insurance, tuition credits, vacation, and the like" but that severance benefits were not included. Majority op. at p. 494.

In this case, although LLE characterizes its severance pay policy as a mere "gratuity" which it may or may not bestow upon a particular employee, the trial judge stated what I believe is the preferred position regarding "handbook" offers:

> Where an employer unilaterally establishes a written policy as to benefits which employees will receive, and those employees are not covered by a contract of employment either individually or by virtue of a collective bargaining agreement, the employer, although free to unilaterally alter or eliminate the benefits at anytime during the term of employment, may not, once an event occurs triggering the employee's right to receive the benefit, unilaterally alter the terms or condition of the benefit. The employee is entitled to the benefit as it existed at the time of the triggering event as the right thereto, vested at that time.

Notes of Testimony (N.T.) 4/2/86 at p. 305. *See Banas v. Matthew International Corp.*, 348 Pa.Super. 464, 502 A.2d 637 (1985) (Beck, J., concurring and dissenting). *See also, Toussaint v. Blue Cross and Blue Shield of Michigan,* 408 Mich. 579, 292 N.W.2d 880 (1980).

Although a majority of the court insists that there was no "meeting of the minds" and thus, no contract, the manifestation of assent to contract may be made "wholly or partly by written or spoken words or by other acts or by failure to act". Restatement (Second) of Contracts § 19 (1981). Comment a of § 19 is illustrative:

Comment:

a. *Conduct other than words.* Words are not the only medium of expression. Conduct may often convey as clearly as words a promise or an assent to a proposed promise.... Where no particular requirement of form is made by the law a condition of the validity or enforceability of a contract, there is no distinction in the effect of the promise whether it is expressed in writing, or orally, or IN ACTS, or PARTLY IN ONE OF THESE WAYS AND PARTLY IN OTHERS.

\* \* \* \* \* \*

Illustration:

1. A lives in B's home and renders services to B over a period of years, and after B's death claims the value of the services. By statute A is incompetent to testify to transactions with B, and there is no evidence of verbal promise. Among the factors relevant to a determination whether the services were gratuitous are the following: a request by B that A render the services, the relation between A and B, the value of the services to B, the alternatives foregone and hardship suffered by A, the financial circumstances of the parties, ...

Restatement (Second) of Contracts § 19 Comment a. (1981) (emphasis added)

Applying this illustration to the present case it is clear that there was sufficient evidence to support the trial court's finding of a binding contract for severance benefits between Hussey Inc. and its former "at-will" employees. First, the handbook which contained the 1982 severance benefits revision provided written proof of the offer. Second, the company's conduct in paying other "at-will" employees severance pay was proof of its offer and intent to be bound. Third, the relationship of the parties as employ-

er and employees is proof that the employees' continued services, and the employer's payment of severance benefits, were not gratuitous. Finally, the fact that the employees had foregone other employment, while the employer concurrently enjoyed the benefit of a loyal, consistent staff, are relevant to the determination that a contract for severance benefits existed.

The majority places inordinate significance on the fact that the terms of the offer were not certain, stating that although Hussey Inc. paid severance to other salaried non-union employees "from time to time, the amounts given were different with each employee, some more, some less, some none at all". Majority op. at p. 494. However, again by reference to ordinary contract principles, the terms of an offer need only be "reasonably certain" to provide the basis for a contract. The Restatement provides:

> (2) The terms of a contract are reasonably certain if they provide a basis for determining the existence of a breach and for giving an appropriate remedy.

Restatement (Second) of Contracts § 33(2) (1981).

In this case although the employees' recollections as to the details of their severance benefits may have differed, they were aware that the company had a severance policy in effect. Therefore, a basis for determining if and when a breach occurred exists. Additionally, because there is a formula for severance pay benefits set forth in the employee handbook and made reference to in various memoranda of LLE and Hussey Inc., a basis exists for devising an appropriate remedy.

Finally, the majority implies that because the class of plaintiffs were employed by the successor company that there was no severance:

> "The class plaintiffs chose to accept employment with the purchasing company and now claim that they are entitled to the twenty-six weeks severance pay as well".

Majority op. at p. 493. There is no question that the class plaintiffs remained working at the Leetsdale, Eminence and other facilities. However, Hussey Copper Ltd. was a com-

pletely new and independent concern. Although the employees were employed by this new company for the same positions, at the same salary levels, their fringe benefits were significantly altered. More specifically, the new employer did not preserve the employees' right to severance. Indeed, the agreement of sale of Hussey Inc. specified that the *former* employer would be responsible for the payment of all severance benefits. In this case the fact that the employees were hired by the *successor* company in the same jobs at the same pay levels will not relieve the *former* employer from its obligation.[1]

I would, therefore, affirm.[2]

---

1. *Accord: Anthony v. Jersey Central Power & Light Co.*, 51 N.J.Super. 139, 143 A.2d 762 (1958); *Hinkeldey v. Cities Service Oil Co.*, 470 S.W.2d 494 (Mo.1971); *Chapin v. Fairchild Camera & Instrument Corp.*, 31 Cal.App.3d 192, 107 Cal.Rptr. 111 (1973); *Mace v. Conde Nast Publications, Inc.*, 155 Conn. 680, 237 A.2d 360 (1967); *Clarke v. Brunswick Corp.*, 48 Mich.App. 667, 211 N.W.2d 101 (1973).

2. There is no need for us to address the cross appeal of the class plaintiffs as it is clear that the subsequent modification of the severance policy by LLE on June 1, 1984, was of no effect. The trial judge did not err in awarding the class plaintiffs severance benefits up to a maximum of twelve weeks of their current base pay, as that was the severance policy and rate of pay in effect at the time of severance.