576 A.2d 398

**Dale OATESS, Appellant,**

v.

**Jeffrey A. BEARD, Superintendent of the State
Correctional Institution at Cresson.**

Superior Court of Pennsylvania.

Submitted May 14, 1990.

Filed June 22, 1990.

506

Dale Oatess, pro se.

Dennis A. Kistler, Asst. Atty. Gen., Lancaster, for Beard, appellee.

Before TAMILIA, CERCONE and HESTER, JJ.

TAMILIA, Judge:

Appellant, proceeding pro se, is an inmate at the State Correctional Institution (SCI) at Cresson and has brought this breach of contract action against appellee, the superintendent. The facts are not in dispute. On March 7, 1989, appellant submitted a purchase request form for legal labels which was approved two days later by the principal of SCI's school. A check was written on appellant's account on March 10th, but the purchase was interrupted on March 17th when appellant received a note saying approval was being withdrawn. Appellee confirmed the withdrawal of approval on March 20, 1989, stating in a note to appellant the labels were not an approved item. Appellant's account was subsequently credited with the purchase amount. Appellant claims the failure to approve the legal labels was a breach of contract in that the Inmate Handbook, on page 17, states, "You may purchase any legal materials you believe to be valuable to you in seeking legal remedies."

■ Initially, we must determine whether this case was properly appealed to the Superior Court. Since it is not a habeas corpus action involving legality of sentence or treatment by a prisoner which could raise issues of cruel and inhuman punishment, Superior Court jurisdiction is not directly implicated. *Szymanski v. Allegheny Co. Ct. Criminal Div.*, 77 Pa.Cmwlth. 316, 465 A.2d 1081 (1983); *Goldsborough v. Burk*, 4 Pa.Cmwlth. 513, 288 A.2d 555 (1972). While the action sounds in the nature of a breach of contract based upon an Inmate Handbook, it also implicates the management of the prison and therefore falls under the original jurisdiction of the Commonwealth Court. *Gillespie v. Com., Dept. of Corrections*, 106 Pa.Cmwlth. 500, 527 A.2d 1061 (1987); *Wilson v. Com., Pa. Bureau of Corrections*, 85 Pa.Cmwlth. 32, 480 A.2d 392 (1984). It is provided in 42 Pa.C.S. § 761 Original jurisdiction:

(a) **General rule.**—The Commonwealth Court shall have original jurisdiction of all civil actions or proceedings:

(1) Against the Commonwealth government, including any officer thereof, acting in his official capacity....

However, the nature of this action as such makes it equally an action against the superintendent as an individual as opposed to the superintendent in his official capacity. Since neither party has contested the jurisdiction of the Superior Court and the issue as proposed is a purely legal one of interpreting the effect of a handbook, without involving issues of statewide impact or policies of the Bureau of Corrections, we believe this is a matter which can be resolved with equal facility by the Commonwealth Court or Superior Court. For the sake of judicial economy, therefore, we retain jurisdiction and will resolve the matter on its merits.

■ The trial court, finding that the Inmate Handbook is not a contract, but may be likened to an employee handbook, granted appellee's preliminary objection in the nature of a demurrer and dismissed appellant's complaint.

The promise alleged by plaintiff to exist here is evidenced by the first sentence of paragraph number one (1) on page 17 of the Inmate Handbook. (Exhibit "C" to plaintiff's Complaint). This sentence reads "[y]ou may purchase any legal materials you believe to be valuable to you in seeking legal remedies." However, there is no corresponding detriment from the inmates sufficient to elevate this "promise" to a legally enforceable contract. Such an exchange is clearly absent in the present case due to the nonvolitional nature of the inmates' relationship with the Department of Corrections.

In the absence of such consideration, a "promise inducing detrimental reliance may be enforceable if the elements of Sec. 90 of the Restatement (Second) of Contracts are present." *Darlington, [v. General Electric ]*, [350 Pa.Super. 183, 193–94,] 504 A.2d [306,] at 311 [1986]. The "promisor" in this case, SCI–CS, could not reasonably be said to have intended to induce reliance by the prisoner-recipients of the Inmate Handbook, in that the prisoners had no choice but to enter the institution. There was no element of choice present in their act of doing so, and thus no active and volitional reliance, and no contract.

Slip Op., Leahey, J., 10/17/89, p. 5.

In the recent case of *Morosetti v. LA. Land & Exploration Co.*, 522 Pa. 492, 564 A.2d 151 (1989), our Supreme Court was faced with the question of whether a company policy of severance pay was an enforceable contract between employer and employee. The policy was contained in a personnel manual which was not given to employees, nor were the provisions revealed to the employees. The Court said:

Again, it is basic contract law that ... there must be an intended, definite, specific offer before any offer can be accepted or any enforceable contract created. One cannot suppose that another made an offer, was willing to make an offer or intended sometime to do so. Minds, for contractual obligation, must meet upon definite, specific things.

The learned trial judge fell into error when he equated an uncommunicated personnel manual with a "handbook." The employees here however, could show no more than an employer's internal consideration of a policy for what might be given when occasion arose. It is not sufficient to show they had a policy. It must be shown they offered it as binding terms of employment. A company may indeed have a policy upon which they intend to act, given certain circumstances or events, but unless they communicate that policy as part of a definite offer of employment they are free to change as events may require.

*Id.*, 522 Pa. at 495–96, 564 A.2d at 153.

As the trial court found, the contract law principles outlined above are applicable in the instant case. Appellant, as an inmate, did not "accept" an offer from the SCI and there was no "meeting of the minds" upon the terms of the handbook. The handbook contains administrative directives concerning aspects of prison life and entitlements of prisoners. The fact that legal labels [1] are not approved items under the above quoted section of the handbook does not constitute a breach of contract. The administrative office of corrections is free to disallow certain requests made by inmates for items such as legal labels, and if circumstances require revision of the handbook or of the list of approved items, the corrections office may freely do so. As the trial court stated, appellant was not hindered in pursuing his legal action because he had to type the exhibit numbers instead of using labels. For the foregoing reasons, we affirm.

Order affirmed.

---

1. Specifically, the small adhesive labels used to mark exhibits.