## DiPlacido v. GTE North Incorporated

*William Taggart,* for plaintiff.
*William H. Keating* and *Joseph R. Stewart,* for defendants.

LEVIN, *J.,* June 8, 1995—Before the court is a motion for summary judgment brought by the defendants, GTE North Incorporated and GTE Telecommunications Marketing Corp., a/k/a TM Corp. Plaintiff, William S. DiPlacido, brought this action for wrongful discharge based on defendants' alleged breach of an employment contract, by failing to abide in good faith to the terms of two separate company policies. Defendants moved for summary judgment contending that no employment contract existed and that no other exception to at-will employment applied, thus plaintiff's cause of action for wrongful discharge must fail.

Plaintiff was hired by GTE in 1971. At the time he was fired in 1990, he was not covered by a collective bargaining agreement. DiPlacido claims that he has either an express or implied employment contract with GTE, based on either one of two distinct company policies.

The first policy is the Management Performance Plan and Appraisal, which is referred to by the parties as Management by Objectives. In short, MBO is a company program used to set criteria for and appraise a manager's job performance. MBO forms are completed in two parts. First, the objectives and performance criteria for the upcoming year are established in the fourth quarter of each year. The results and appraisal are completed during the first quarter of the year following the performance. After the performance appraisal, the employee and his supervisor sign the MBO to indicate that the review occurred.

DiPlacido received MBOs each year since 1987, when he moved into management. Each spring DiPlacido signed his MBO for the prior calendar year. On April 30, 1990, DiPlacido and his new supervisor, Lawrence

Cooper, erroneously signed DiPlacido's 1990 MBO before his 1990 performance could occur or be reviewed.

In his 1990 MBO, DiPlacido was assigned an annual revenue quota of $900,000, which he acknowledged by signing his 1990 compensation plan. Attainment of his annual quota was also listed as a major objective on DiPlacido's 1990 MBO.

The second company policy in question is the Performance Improvement Plan. PIP is a constructive disciplinary program for sales associates who fail to meet their revenue quota. Michael Kossler was a consultant on employee relations with GTE, who participated in the development of the PIP. In his deposition, Kossler testified that GTE developed and used the PIP policy with the intention of helping employees who fall short of their quotas to refocus on the attainment of their quotas.

On May 1, 1990, GTE advised DiPlacido that he was being placed on the PIP due to his unsatisfactory sales performance. A company memorandum dated May 15, 1990, confirmed DiPlacido's placement on PIP effective May 1 to July 31, 1990. In this memo, DiPlacido was warned that his year-to-date quota was unacceptably low and that discharge could result if his performance failed to improve by the end of the PIP. The memo also advised him that additional details of the PIP were included in attached documents.

In the first paragraph of the attached documents was a statement of the purpose of PIP and a warning:

"The . . . (PIP) has been designed to assist salespeople who are not meeting minimum sales quota requirements that are established as a function of their tenure in the sales force. The components of PIP are basic sales management techniques. Once the salesperson has participated in PIP and there is no marked improvement

in their sales effort management, or quota attainment, then further action, up to and including termination, may be required."

These documents also advised DiPlacido that if improvement was unsatisfactory at the conclusion of the initial phase, several options were available. These included granting an extension phase of PIP, termination or alternate placement.

By memo dated August 6, 1990, DiPlacido was advised that his performance remained unsatisfactory. The memo further advised DiPlacido that he was being granted a "60-day PIP extension period," at the end of which his performance would be reviewed again.

At the conclusion of this extension period, DiPlacido's performance failed to improve to GTE's satisfaction. On October 27, 1990, GTE terminated DiPlacido's employment. The reason for GTE's action was DiPlacido's failure to improve his year-to-date quota attainment, even after participating in PIP.

Since this case involves a motion for summary judgment against plaintiff, the court must resolve all factual disputes in favor of the plaintiff. *Trenco Inc. v. PennDOT,* 126 Pa. Commw. 501, 560 A.2d 285 (1989), *alloc. denied,* 525 Pa. 591, 575 A.2d 120 (1990). Pa.R.C.P. 1035(b) provides that summary judgment "shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." It is not this court's function to decide issues of fact, but solely to determine whether there are issues of fact to be tried. *Thorsen v. Iron and Glass Bank,* 328 Pa. Super. 135, 476 A.2d 928 (1984). Nonetheless, where defendant has filed affidavits and depositions in support of sum-

mary judgment, plaintiff may not rest upon the mere allegations or denials of his pleadings. Pa.R.C.P. 1035(d). Instead, plaintiff is required to respond with affidavits and the like to show that there are genuine issues of fact for trial. *Id.* Based on an examination of the uncontroverted facts, the court finds that this case is ripe for summary judgment.

A review of Pennsylvania law reveals that the employment at-will doctrine remains viable. Under this doctrine, it is presumed that all employment is at-will and, therefore, an employee may be discharged for good reason, bad reason or no reason at all. *Krajsa v. Keypunch Inc.,* 424 Pa. Super. 230, 622 A.2d 355 (1993). "[A]s a general rule, there is no common law cause of action against an employer for termination of an at-will employment relationship." *Clay v. Advanced Computer Applications Inc.,* 522 Pa. 86, 89, 559 A.2d 917, 918 (1989). Absent a valid contract providing to the contrary or other recognized exception, the employment relationship is presumed to be at-will.[1] *Rutherfoord v. Presbyterian-University Hospital,* 417 Pa. Super. 316, 323, 612 A.2d 500, 503 (1992). The burden of overcoming this presumption and proving that one is not employed at-will "rests squarely" with the employee. *Id.*

The plaintiff's first contention is that he has an employment contract based on both his 1990 MBO and the PIP. DiPlacido claims that his 1990 MBO constitutes an agreement because it contains a job description, list

---

1. The employment at-will presumption may be circumvented by showing that the termination was against public policy or made with the specific intent to harm the employee. *Veno v. Meredith,* 357 Pa. Super. 85, 515 A.2d 571 (1986), *alloc. denied,* 532 Pa. 665, 616 A.2d 986 (1992). DiPlacido has made no such allegations in the instant case.

of objectives, and that he and his supervisor signed it. DiPlacido lists the following factors in support of his assertion that PIP is a contract: (1) it runs for a defined period; (2) it lists things that both the company and employee will do during the PIP period; and (3) it sets monthly quotas.

"[A] written personnel policy may serve as the basis for a cause of action for breach of a provision contained within it if, under all the circumstances, the parties manifest an intent that it become a legally binding contract." *Curran v. Children's Service Center,* 396 Pa. Super. 29, 35, 578 A.2d 8, 10 (1990), *alloc. denied,* 526 Pa. 648, 585 A.2d 468 (1991).

"It is not sufficient to show [the employer] had a policy. It must be shown [the employer] offered it as binding terms of employment. A company may indeed have a policy upon which they intend to act, given certain circumstances or events, but unless they communicate that policy as part of a definite offer of employment they are free to change [it] as events may require." *Morosetti v. Louisiana Land and Exploration Co.,* 522 Pa. 492, 496, 564 A.2d 151, 153 (1989). (citation omitted)

"[I]t is for the court to interpret the handbook [or policy] to discern whether it contains evidence of the employer's intention to be legally bound [by it]." *Ruzicki v. Catholic Cemeteries Association of Diocese of Pittsburgh,* 416 Pa. Super. 37, 42, 610 A.2d 495, 497 (1992). "In cases involving implied contracts of employment, the litigant will be able to reach the jury only if he can clearly show that he and the employer intended to form a contract." *DiBonaventura v. Consolidated Rail Corp.,* 372 Pa. Super. 420, 425, 539 A.2d 865, 868 (1988); see also, *Case v. Lower Saucon Township,* 654 A.2d 57 (Pa. Commw. 1995).

In determining the existence of a contract, the court must consider whether the MBO or PIP policy contains evidence of GTE's intent to renounce the at-will employment relationship and be legally bound by the policies. To overcome the presumption that the employment relationship is at-will, an alleged contract must express a clear and definite intention to renounce the at-will status. *Scott v. Extracorporeal Inc.,* 376 Pa. Super. 90, 545 A.2d 334 (1988); *Veno v. Meredith,* 357 Pa. Super. 85, 515 A.2d 571 (1986). When determining an employer's intention, a court may consider the surrounding circumstances, stipulations by the parties, objects the parties apparently had in view and the nature of the subject matter of the agreement. *Darlington v. General Electric,* 350 Pa. Super. 183, 201-202, 504 A.2d 306, 315 (1986).

A review of these factors shows no intent by GTE to renounce the employment at-will relationship or be contractually bound by the MBO or PIP policy. GTE admits that DiPlacido's 1990 MBO contains a job description, a list of objectives and was erroneously signed prematurely, but this alone is not determinative of GTE's intent to form a binding contract. DiPlacido has no evidence that the signing was done other than to indicate that the appraisal occurred and that notice of the job requirements were communicated to him. It is common practice for employees to sign their job evaluation, but this signature does not bestow any additional rights on the employee, unless there is a clear intent by the employer to do so.

The express language of both the MBO and PIP fails to reveal an intent by GTE to be bound by the policies or bestow any additional rights on the employees. The MBO and PIP documents contain no language expressly modifying DiPlacido's employment at-will status, nor

do they require any additional consideration from DiPlacido. Neither document expressly provides for a definite term of employment or expressly forbids discharge in the absence of just cause or without the satisfaction of specified steps. Neither PIP nor MBO contains a very clear statement of GTE's intent to renounce the at-will employment relationship or to legally bind it to the terms of the policies. Accordingly, neither the MBO or PIP contains language sufficient to form an express contract.

DiPlacido also represents that under the terms of the PIP policy, an employee will not be terminated while on PIP or if he successfully completes the program. Unfortunately, this wording cannot be found in or inferred from the PIP documents. Instead, the language in PIP merely provides that an employee may be terminated if he does not successfully complete PIP. This wording falls short of promising employment for the duration of an employee's assignment to PIP or after its completion. Thus, it cannot take DiPlacido out of his employment at-will status.

The evidence also shows that GTE intended and utilized the MBO form only as a management performance appraisal tool. The Pennsylvania Superior Court has previously ruled that a document used for annual performance appraisals of management employees does not constitute an employment contract. *DiBonaventura, supra* at 425, 539 A.2d at 868. The plaintiff in *DiBonaventura* asserted that a document entitled "Management Performance Appraisal Agreement" and an accompanying manual represented a contract of employment, and that the contract terms of duration and just cause could be implied from the evidence presented. In *DiBonaventura,* the court determined that the Performance Appraisal Agreement did not give rise

to an implied employment contract and that the document was intended to be "at most aspirational and indicative of management's attempt to define goals and improve productivity and efficiency rather than to create an employment contract . . . ." *Id.* at 428, 539 A.2d at 869.

Similarly, in *Booth v. McDonnell Douglas Truck Services Inc.,* 401 Pa. Super. 234, 585 A.2d 24 (1991), *alloc. denied,* 528 Pa. 620, 597 A.2d 1150 (1991), the court rejected plaintiff's claim that the practice of conducting annual appraisals and payment of an annual salary gave rise to an implied contract of employment. The court noted that annual evaluations are commonplace and if such practices were sufficient to overcome the at-will presumption, "there would be nothing left of it." *Id.* at 241, 585 A.2d at 27. Therefore, in the instant case, the MBO, as a management appraisal tool, does not constitute an employment contract between GTE and DiPlacido.

As to the PIP policy, the uncontroverted deposition testimony of Kossler shows that PIP was developed and used by GTE as a form of constructive discipline. DiPlacido has failed to present any evidence that GTE intended to bestow additional rights on its employees when it implemented this policy. Thus, no intent to be bound can be inferred from GTE's mere use of the PIP policy.

As to DiPlacido's contention that GTE breached their policy of providing alternate placement to employees, the court finds it to be meritless. DiPlacido claims that GTE breached this policy when it did not offer him alternate placement prior to terminating his employ. "It is not sufficient to show only that [the employer] had a policy. It must be shown that [the employer] intended to offer it as a binding contract." *Morosetti*

*v. Louisiana Land and Exploration Co., supra* at 495, 564 A.2d at 152-53. First, DiPlacido has failed to show that such a policy existed, other than the language in the PIP policy. Second, the language in PIP lists alternate placement as a *possibility* for employees who fail to make satisfactory improvement. It does not promise or require alternate placement. Without evidence of GTE's intent to provide alternate placement as a binding policy, DiPlacido cannot succeed on this claim.

DiPlacido next alleges that GTE was under an obligation to apply the policies in good faith, based on (1) an alleged requirement of good faith implied in all employment relationships, or (2) the contracts created under PIP and MBO. First, under Pennsylvania law, there is no implied good faith or fair dealing requirement in an at-will employment relationship concerning termination of employment. *Banas v. Matthews International Corporation,* 348 Pa. Super. 464, 502 A.2d 637 (1985). Second, an employer's failure to follow its own evaluation policies is insufficient to state a cause of action for wrongful discharge, unless it is contractually obligated to follow the policy. *Darlington v. General Electric, supra.* Only where an employment contract exists will the term of good faith be implied. *Somers v. Somers,* 418 Pa. Super. 131, 613 A.2d 1211 (1992); *DiBonaventura, supra* at 425, 539 A.2d at 868. To rule otherwise would effectively end the doctrine of employment at-will. Such an alteration is in the province of the appellate courts or legislature, and not this trial court.

Since GTE was not contractually obligated to follow either the PIP or MBO, it could change the policies in midstream, abandon or even ignore them. *Morosetti, supra* at 495, 564 A.2d at 152-53. Where the court has found that no contract existed, defendants were

under no duty to apply the PIP or MBO policy in good faith and this claim must also fail.

The final issue is whether DiPlacido gave additional consideration to trigger this exception to the at-will employment doctrine. The presence of additional consideration will rebut the at-will presumption unless the parties specifically agree to an at-will employment relationship. *Darlington, supra* at 200, 504 A.2d at 314. In such a case, an employee cannot be discharged without just cause for a reasonable time. *Veno, supra* at 102, 515 A.2d at 580. Additional consideration exists when an employee affords his employer a substantial benefit other than the services which the employee is hired to perform or when the employee undergoes a substantial hardship other than services which he is hired to perform. *Cashdollar v. Mercy Hospital of Pittsburgh,* 406 Pa. Super. 606, 595 A.2d 70 (1991). Additional consideration will not be found where an employee incurs detriment commensurate with that incurred by all manner of salaried professionals, *Darlington, supra* at 202, 504 A.2d at 315, or where he is merely fulfilling training required for the position. *Beyda v. USAir,* 697 F. Supp. 1394 (W.D. Pa. 1988).

DiPlacido asserts that while on the PIP, he attempted to meet the PIP quota and participated in coaching and planning activities that required an additional time commitment. However, these activities will not support a finding of additional consideration. Prior to his participation in PIP, DiPlacido was already obligated to meet a quota greater than that set in his PIP. The additional time spent in training was also a detriment commensurate with that of all salaried professionals. Since DiPlacido did not incur any extraordinary detriment or bestow any extraordinary benefit upon GTE beyond the services he was already obligated to provide,

these activities cannot constitute additional consideration to rebut the presumption that he was an employee at-will.

Where DiPlacido has not met his burden to show that GTE intended to contractually limit its right to terminate his employment or that he gave sufficient additional consideration, plaintiff has failed to rebut the presumption that his employment was at-will. As an employee at-will with no exception applicable, GTE could terminate DiPlacido's employ for any or no reason. Therefore, DiPlacido cannot succeed in his action for wrongful discharge. Where no genuine issues of fact remain for trial, this court is constrained to grant summary judgment for the defendants.

### ORDER

And now, June 8, 1995, it is hereby ordered, adjudged and decreed that defendants' motion for summary judgment is granted for the reasons set forth in the opinion filed herewith.