# Solomon v. United States Health Care Systems of Pennsylvania Inc.

*Mark C. Rifkin,* for plaintiffs.

*Burt M. Rublin,* for defendants.

LEVIN, *S.J.,* June 19, 2001—

## INTRODUCTION

This case involves the payment of insurance claims by health care providers to licensed insurance carriers. Plaintiffs Mark Solomon M.D., and Regional Neurosurgical Associates P.C. (RNA), are health care providers. They claim that United Health Care Systems of Pennsylvania Inc., and Aetna Inc., defendants, have failed to timely pay insurance claims, or to pay interest thereon. Plaintiffs make two specific claims: first, plaintiffs claim that defendants' failure to pay claims within 45 days, or to pay interest thereon, is a violation of the Pennsylvania 1998 Quality Health Care Accountability and Protection Act, 40 Pa.C.S. §991.2101 et seq.; and second, plaintiffs claim that defendants' failure to pay claims for reimbursement within 30 days, or to pay interest to plaintiffs on claims not paid within 30 days, is a breach of the parties' contract.

This case is presently before this court on defendants' preliminary objections, defendants' motion for summary judgment and plaintiffs' cross-motion for summary judgment. Earlier in this case, on November 30, 1999, this court sustained defendants' preliminary objections to five of six counts in plaintiffs' first amended complaint, thereby dismissing with prejudice all of plaintiffs' claims except plaintiffs' claim for breach of contract (Count I). (See order dated 11/30/99.) Thereafter, plaintiffs filed a second amended complaint on October 11, 2000, in which they added a new count (Count VII), which claims that defendants have violated the Pennsylvania Health Care

Act. Hence, the claims presently pending before this court are defendants' preliminary objections to plaintiffs' new Count VII (violation of the Health Care Act), defendants' motion for summary judgment to plaintiffs' Count I (breach of contract), and plaintiffs' cross-motion for summary judgment.

## DEFENDANTS' PRELIMINARY OBJECTIONS TO PLAINTIFFS' FIRST AMENDED COMPLAINT

Following is a discussion of the reasons this court sustained defendants' preliminary objections to five counts contained in plaintiffs' first amended complaint. The five counts to which this court sustained preliminary objections are as follows: breach of the implied covenant of good faith and fair dealing, unjust enrichment, fraud, conversion, and negligent misrepresentation. This court found that all of these counts, except for the count for breach of the implied covenants of good faith and fair dealing, were fundamentally flawed because they are contract counts that merely sound in tort law.

In Pennsylvania, the basis of a legal action dictates which claims may be brought. An action based on an agreement between the parties is in fact a contract action, and therefore it cannot be enforced by tort principles. The "important difference between contract and tort actions is that the latter lie from the breach of duties imposed as a matter of social policy while the former lie for the breach of duties imposed by mutual consensus." *Redevelopment Authority of Cambria County v. International Insurance Co.,* 454 Pa. Super. 374, 392, 685 A.2d 581, 590 (1996). A contract action may not be converted into a tort action simply by alleging that the conduct in

question was done wantonly. In order for there to lie an agreement-based tort action, the wrong ascribed to the defendant must be the "gist of the action," with the contract being "collateral." *Id.*

The instant action is both in its essence and upon its face one for breach of contract. Here, there is a clearly written agreement governing the conduct between the parties. Thus, the duties of the parties here were imposed by mutual consensus. A tort action cannot lie here because the contract is central, not collateral, to the action. Therefore, plaintiffs' claims sounding in tort were properly dismissed by this court as inconsistent with plaintiffs' breach of contract claim. *Id.*[1]

## DEFENDANTS' PRELIMINARY OBJECTIONS TO PLAINTIFFS' SECOND AMENDED COMPLAINT

Defendants limit their preliminary objections to plaintiffs' second amended complaint to plaintiffs' newly pleaded Count VII. Defendants claim that Count VII lacks legal sufficiency, and should be dismissed by this court.

In Count VII of the second amended complaint, plaintiffs seek to enforce the defendants' alleged statutory obligations of the Pennsylvania 1998 Quality Health Care Accountability and Protection Act, 40 Pa.C.S. §991.2101 et seq. Section 2166(a) of the Health Care Act requires that defendants promptly pay "clean claims" (as that term is defined in the statute) "within 45 days of receipt of the

---

1. This court also dismissed plaintiffs' count for breach of the implied covenant of good faith and fair dealing, on the grounds that there is no evidence in the parties' agreement, or in their conduct, which suggests the existence of an implied covenant between the parties. The absence of any implied covenant is more fully addressed in the "summary judgment" section of this opinion.

clean claim." 40 Pa.C.S. §991.2166(a). When defendants fail to pay clean claims within 45 days of receipt they are required to pay "interest at 10 percentum per annum . . . beginning the day after the required payment date and ending on the date the claim is paid" in addition to the amounts owed for the clean claims. 40 Pa.C.S. §991.2166(b). Count VII of plaintiffs' second amended class action complaint alleges that defendants' failure to pay within 45 days, or pay interest thereon, constitutes a violation of the Health Care Act.[2]

Defendants, on the other hand, argue that the Health Care Act confers "no private statutory cause of action." (See defendants' preliminary objections to plaintiffs' second amended class action complaint at p. 1.) Plaintiffs respond to defendants' argument in three ways. First, they argue that the Health Care Act provides an explicit private right to seek redress in this court; second, they argue that there is an implicit private right of action in the Health Care Act; and third, plaintiffs argue that the permissive language of the governing regulations confers a private right of action.

This court's standard of review on preliminary objections is well established. Preliminary objections may be sustained only if it is clear from all the facts pleaded that

---

2. Count VII to plaintiffs' amended complaint also alleges that defendants' acts and omissions . . . constitute unfair methods of competition or unfair or deceptive acts or practices within the meaning of the Unfair Insurance Practices Act, 40 Pa.C.S. §1171.5. (Plaintiffs' second amended complaint, ¶¶70, 71.) Plaintiffs, however, have abandoned this claim, and this court will therefore not address it. (See memorandum in support of plaintiffs' preliminary objections to defendants' preliminary objections to plaintiffs' second amended complaint at pp. 4-5 n.2.)

the pleader will be unable to prove facts legally sufficient to establish his or her right to relief. *Hazleton Area School District v. Bosak,* 671 A.2d 277, 281 (Pa. Commw. 1996). The court must consider as true all the well-pleaded material facts set forth in the complaint and all reasonable inferences that may be drawn from those facts. *Bower v. Bower,* 531 Pa. 54, 56, 611 A.2d 181, 182 (1992). Where (as here) the grant of preliminary objections will result in the denial of a claim, or dismissal of a suit, preliminary objections should be sustained only in cases that are clear and free from doubt. *Legman v. Scranton School District,* 432 Pa. 342, 345, 247 A.2d 566, 569 (1968). Finally, the preliminary objector has the burden of supporting its objections to the court's jurisdiction. *Schmitt v. Seaspray-Sharkline Inc.,* 366 Pa. Super. 528, 531, 531 A.2d 801, 803 (1987).

This court finds that no private right of action is conferred by section 991.2166(a) of the Health Care Act, 40 Pa.C.S. §991.2166(a). First, there is no explicit right of action in the Health Care Act. Plaintiffs' argument that section 2162(c)(5) of the Health Care Act (40 Pa.C.S. §991.2162(c)(5)) "confers an *explicit* private right of action upon a health care provider for a managed health plan's failure to make timely payments within the 45 days permitted by the statute" is without merit. In fact, this particular provision does not address "clean claims" or the prompt payment requirements of section 2166. Instead, section 2162(c)(5) relates solely to appeals from an "external grievance decision" by a utilization review entity. Moreover, the term "grievance" is confined to disputes "concerning the medical necessity and appropriateness of a health care service" for an *enrollee.* 40 Pa.C.S. §991.2102. Therefore, section 2166 does not

provide an explicit private right of action by *providers* for failure to timely pay clean claims.

Second, there is no evidence to suggest that the Health Care Act implies a private right of action. The Health Care Act vests the Department of Health and the Insurance Department with the responsibility to enjoin or penalize managed care plans for violations of the Act. See 40 Pa.C.S. §§991.2101, 2102. Moreover, the regulations promulgated in March 2000, make it clear that the prompt payment provisions of section 2166 of the Health Care Act subject a managed care plan to only administrative complaints filed with or by the Insurance Department. See 31 Pa. Code §154.18. The Health Care Act makes no implicit reference whatsoever to a private right of action by health care providers in court.

Finally, plaintiffs argue that the permissiveness of the language of the Department of Insurance's regulations indicates that the legislature intended to provide a private cause of action under the Health Care Act. Pursuant to the Department of Insurance regulations, a health care provider "may file a complaint either individually or in batches, with the department." 31 Pa. Code §154.18. This language, however, merely creates the right to file a complaint with the department of Insurance. The right to complain to the Department of Insurance clearly does not imply a right to complain to this court. Accordingly, this claim is without merit.

Thus, this court finds that no private right of action is conferred by section 991.2166(a) of the Health Care Act, 40 Pa.C.S. §991.2166(a). Therefore, it is clear from the record that plaintiffs will not be able to prove facts legally sufficient to establish their right to relief. Accord-

ingly, this court sustains defendants' preliminary objections to Count VII of plaintiffs' second amended complaint.

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT

Also pending before this court is defendants' motion for summary judgment to plaintiffs' breach of contract claim. Count I of plaintiffs' second amended complaint states, inter alia, that "plaintiffs and the members of the class entered into agreements with Aetna whereby plaintiffs and the other members of the class promised to provide pre-approved medical services to Aetna subscribers in exchange for prompt reimbursement for those services from Aetna." (Plaintiffs' second amended complaint, ¶38.) Plaintiffs' complaint further states that "[a] reasonable amount of time, for such payment is within 30 days from the date of the claim." *Id.*

The first of the two named plaintiffs in this action is Mark P. Solomon M.D., a plastic surgeon who entered into a specialist physician's agreement with Aetna's predecessor on June 28, 1985. (Solomon contract at 1.) In accordance with the terms of his contract, Solomon agreed, inter alia, to provide health care services to Aetna HMO subscribers in return for reimbursement at a rate established in Aetna's fee policy. (*Id.* at §§1-2.)

Plaintiffs assert that defendants breached the parties' contract by failing to pay claims for reimbursement within 30 days, to pay interest to plaintiffs on claims not paid within 30 days, and to pay in full all claims for procedures allegedly "pre-approved" by defendants.

In their motion for summary judgment, defendants argue that the supposed contractual requirements for timely payment alleged by plaintiffs do not appear anywhere in the contracts themselves. Moreover, defendants argue that, as a matter of law, this court cannot imply a time for payment. Defendants point to the fact that, throughout the 15 years of dealing between the parties, they have routinely paid claims beyond 30 days without paying interest. Defendants assert, therefore, that the record demonstrates that there is no genuine issue of any material fact as to the breach of contract claim and defendants are entitled to summary judgment as a matter of law.

Plaintiffs respond that this court should look to the parties' course of dealing in order to imply a term not in the contract. Plaintiffs cite legal authority in support of their argument that there is in all contracts which are silent with respect to time for performance, an implied obligation to perform within a reasonable period of time. See *e.g., Hodges v. Pennsylvania Millers Mutual Insurance Co.,* 449 Pa. Super. 341, 673 A.2d 973 (1996). Furthermore, plaintiffs point out that defendants' *"policy for the last 15 years has been to pay claims within 30 days after submission by the specialist physicians."* (Plaintiffs' response to defendants' motion for summary judgment and their cross-motion for summary judgment at p. 1.) (emphasis in original)

Plaintiffs point to the deposition testimony of Aetna's claim function head, Patricia Bustard, in support of their claim that defendants had a policy of paying claims within 30 days. (*Id.* at p. 2.) Plaintiffs assert that defendants' alleged internal policy to pay claims within 30 days raises

a genuine issue of material fact regarding whether defendants' own conduct created an obligation to pay claims within 30 days. (Plaintiffs' response to defendants' motion for summary judgment and their cross-motion for summary judgment at pp. 4-5.)

The Pennsylvania Rules of Civil Procedure provide for the entry of summary judgment "whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report." Pa.R.C.P 1035.2. The nonmovant for summary judgment is entitled to all reasonable inferences, and any doubts as to the existence of a factual dispute must be resolved in the nonmovant's favor. *Imler v. Hollidaysburg American Legion Ambulance Service,* 731 A.2d 169, 172 (Pa. Super. 1999). Finally, because an order favorable to the moving party will prematurely end an action, summary judgment is appropriate in only the clearest of cases. *Lapio v. Robbins,* 729 A.2d 1229, 1231 (Pa. Super. 1999).

It is undisputed that the contract in question contains no explicit requirement that defendants pay claims within a specified time period. It is further undisputed that the contract contains no provision for the payment of interest on claims. Moreover, it is clear from the testimony of Dr. Solomon that no precedent of 30 day payment, or payment of interest, was created through his 15 year course of dealing with defendants. Therefore, the parties' course of dealing does not give rise to an implied covenant on defendants' part to pay claims within 30 days, or pay interest thereon.

Pennsylvania law is well-settled that a court "may imply a missing term in a parties' contract only when it

is necessary to prevent injustice and it is abundantly clear that the parties intended to be bound by such term." *Kaplan v. Cablevision of PA Inc.,* 448 Pa. Super. 306, 314, 671 A.2d 716, 720 (1996) (en banc), *appeal denied,* 546 Pa. 645, 693 A.2d 883 (1996). In *Kaplan,* which was a class action, the plaintiff cable television subscriber had alleged that Cablevision breached the parties' subscription agreement by failing to rebate fees for periods of time when cable service had been interrupted. Unable to point to any provision in the agreement imposing this rebate obligation on Cablevision, plaintiff argued, just as plaintiffs argue here, that the court should "read into the agreement by 'necessary implication' this contractual obligation." *Id.* The Superior Court, sitting en banc, affirmed the granting of Cablevision's demurrer to the breach of contract claim, stressed that "[w]e may not imply the contractual duty to provide continuous uninterrupted service or unrequested credits for outages when it is unclear whether the cable companies clearly intended to be bound by this obligation." 448 Pa. Super. at 315, 671 A.2d at 720; *id.;* accord *Amerikohl Mining Inc. v. Mount Pleasant Township,* 727 A.2d 1179, 1183-84 (Pa. Commw. 1999) (Court held that trial judge erred in implying term absent from contract, noting that "the doctrine of necessary implication may be applied only in limited circumstances" and only when it is "apparent that an obligation is within the contemplation of the parties at the time of contracting or is necessary to carry out their intentions.").

Here the record conclusively demonstrates that Aetna never intended at all to be bound by the alleged obligations that plaintiffs now ask this court to imply. Indeed, Dr. Solomon's deposition testimony clearly demonstrates

that for 15 years, Aetna habitually paid his claims for reimbursement more than 30 days after submission. In fact, Dr. Solomon characterized Aetna's alleged untimeliness in reimbursing his claims as a "pattern" which "had been ongoing and ongoing and ongoing." (Solomon dep. at pp. 44-45.) Dr. Solomon further testified that "for *15 years or 14 years* at that point I had been sending out bills to Aetna and in some cases I was routinely getting paid six months to 12 months after it was sent without a dime of interest." (*Id.* at 45-46.) (emphasis added) In fact, Dr. Solomon testified that "eight or nine years ago" he consulted an attorney about this "pattern." (*Id.* at pp. 44-45.)

Dr. Solomon further acknowledged that the practice of paying claims for reimbursement more than 30 days after submission was not unique to Aetna, but was common to *all* private insurers, including Independence Blue Cross/Independence Blue Shield, the other carrier with whom Solomon primarily dealt. (*Id.* at pp. 50-51, 102-104.) Accordingly, the court finds as a matter of law that no obligation to pay claims within 30 days, or pay interest thereon, arose between Dr. Solomon and defendants as a result of their course of dealing over a 15-year period.

Similarly, no obligation to pay claims within 30 days, or to pay interest thereon, arose between RNA and defendants by way of their course of dealing.[3] Dr. Barrer

3. Plaintiffs Mark Solomon M.D., and Regional Neurosurgical Associates P.C., had separate contracts with defendants. RNA is a partnership comprised of Steven Barrer and David M. Pagnanelli. Although Dr. Barrer and Dr. Pagnanelli separately entered into individual contracts, both parties to this litigation concede that those contracts are "virtually identical in all material respect" to the contract entered into

and Dr. Pagnanelli individually entered into specialist physician agreements with Aetna's predecessor on August 8, 1989, and December 7, 1988, respectively. (Barrer contract at 1; Pagnanelli contract at 1.) The Barrer contract and the Pagnanelli contract were substantively identical to the Solomon contract in all relevant respects, containing essentially the same terms with respect to the provision of services, reimbursement, and termination. (Barrer contract §§1-2, 5; Pagnanelli contract §§1-2, 5.) Neither the Barrer contract nor the Pagnanelli contract made reference to the timing of reimbursement, the payment of any interest on allegedly untimely reimbursement, or any "pre-approval" procedures.

Dr. Barrer testified at his deposition that, in his course of dealing with Aetna since 1989, there were "many, many occasions"—"I would say the majority"—on which RNA claims for reimbursement were not paid within 30 days. (Barrer deposition at p. 34.) Indeed, Dr. Barrer characterized Aetna's payment of claims for reimbursement more than 30 days after submission as "business as usual." (Barrer transcript at p. 36.) Moreover, Dr. Barrer admitted that no one from Aetna ever told him that Aetna deemed itself contractually obligated to pay claims within 30 days or to pay interest and that, in fact, Aetna *never* paid interest to RNA. (*Id.* at 42.)

As with Dr. Solomon, there existed no custom or practice between Dr. Barrer and Aetna which would permit the court to imply a contractual obligation on Aetna's part to pay RNA's claims for reimbursement within 30

---

between Dr. Solomon and defendants. (See plaintiffs' response to defendants' motion for summary judgment and their cross-motion for summary judgment at p. 3.)

days or to pay interest. To the contrary, Dr. Barrer testified that throughout the many years of business dealings between RNA and Aetna, Aetna regularly paid after 30 days, and never paid interest. Thus, Dr. Solomon's and Dr. Barrer's courses of dealing with defendants were alike. Both regularly received payments after 30 days, and neither ever received interest. Therefore, this court is unwilling to imply a contract term when it is clear from the record that the parties did not intend to be bound by the term.[4]

Additionally, plaintiffs' claim that defendants had an internal policy to pay claims within 30 days, and that such a policy is proof of a course of dealing between the parties. This argument, however, is without merit, plaintiffs were never made aware that defendants had an internal policy to pay claims within 30 days. Therefore, plaintiffs could not have relied upon defendants' undisclosed internal policy. Indeed, plaintiffs never testified that they were ever told by defendants that their claims would be paid within 30 days.

Moreover, plaintiffs' undisclosed internal policy was only an internal goal, as evidenced by Patricia Bustard's testimony that the sought-after 30 day processing of claims was merely a "goal" upon which Aetna has tried

---

4. Plaintiffs' second amended complaint also alleges several instances where "Aetna gave Solomon 'pre-approval' to perform a certain medical procedure on a patient and then later, after the procedure was performed and a claim submitted by Solomon, Aetna withdrew its pre-approval and denied the claim entirely." (Plaintiffs' second amended complaint, ¶35.) However, at his deposition, Solomon stated that he ultimately received payment on these claims, and therefore is now only seeking the payment of interest. (Solomon deposition at pp. 170-72.)

to improve. (See Bustard deposition at pp. 122-25.) Thus, defendants adopting an internal goal does not create an enforceable contractual right on the part of plaintiffs, to whom the policy was never disclosed or promised.

Pennsylvania law is clear that the adoption of an internal policy in these circumstances does not give rise to any contractual duty on the part of the policy maker. Instructive here is the Pennsylvania Supreme Court's decision in *Morosetti v. Louisiana Land and Exploration Co.,* 522 Pa. 492, 564 A.2d 151 (1989). *Morosetti* was a class action in which former employees sued for severance pay on the basis of the employer's undisclosed severance pay policy. In *Morosetti,* as here, plaintiffs contended that defendant's internal policy evidenced an acknowledged contractual obligation that plaintiffs were entitled to enforce. The Supreme Court disagreed, stating, "[i]t is not sufficient to show they had a policy. It must be shown they offered it as binding terms of employment. A company may indeed have a policy upon which they intend to act, given certain circumstances or events, but unless they communicate that policy as part of a definite offer of employment they are free to change as events may require." 522 Pa. at 496, 564 A.2d at 153.

Numerous other cases hold to the same effect. See *e.g., Stumpp v. Stroudsburg Municipal Authority,* 540 Pa. 391, 396, 658 A.2d 333, 335 (1995) ("It is basic contract law that one cannot suppose, believe, suspect, imagine or hope that an offer has been made. An offer must be intentional, definite, in its terms and communicated; otherwise, no meeting of the minds can occur."); *Luteran v. Loral Fairchild Corp.,* 455 Pa. Super. 364, 373-74 n.3, 688 A.2d 211, 216 n.3 (1997) ("A company may indeed

have a policy upon which they intend to act, given certain circumstances or events, but unless they communicate that policy as part of a definite offer of employment they are free to change as events may require."); *Bernstein v. Commonwealth,* 151 Pa. Commw. 401, 412, 617 A.2d 55, 61 (1992) ("[A]lthough the Commonwealth may have adopted a policy in 1976 to pay the full cost of retired employees' health care plans under Option II, neither the pleaded facts nor the attached exhibits indicate that the Commonwealth ever communicated that policy . . . .").

The Supreme Court's holding in *Morosetti* clearly governs in the instant case. Here, it is undisputed that Aetna never communicated to plaintiffs its internal policy of attempting to provide reimbursement for claims within 30 days. Moreover, Aetna explicitly disavowed to plaintiffs any obligation to pay claims within 30 days or to pay interest on claims not paid within 30 days. (Solomon deposition at pp. 73-74.) Accordingly, no duty to pay claims within 30 days, or pay interest thereon, arose as a result of defendants' internal undisclosed policy.

Thus, this court finds that there was no custom, practice, or course of dealing between plaintiffs and Aetna by which this court could imply that Aetna was obligated either to pay plaintiffs' claims for reimbursement within 30 days or to pay interest thereafter. Moreover, this court finds that defendants' undisclosed internal policy to pay claims within 30 days does not constitute evidence of a custom, practice, or course of dealing, and does not give rise to a duty on defendants' part to pay claims within 30 days or pay interest thereon. Accordingly, as there is no genuine issue of material fact regarding defendants' alleged obligation to pay claims

within 30 days or pay interest thereon, this court grants defendants' motion for summary judgment.[5]

## CONCLUSION

For the foregoing reasons, this court sustains defendants' preliminary objections to Count VII (violation of the Pennsylvania Health Care Act) of plaintiffs' second amended complaint, grants defendants' motion for summary judgment to Count I (breach of contract) of plaintiffs' second amended complaint, denies plaintiffs' cross-motion for summary judgment and enters the following two orders.

## ORDER

And now, June 19, 2001, upon consideration of defendants' preliminary objections to Count VII (violation of the Pennsylvania Health Care Act) of plaintiffs' second amended complaint, and all submissions related thereto, it is hereby ordered that defendants' preliminary objections are sustained, and Count VII of plaintiffs' second amended complaint is dismissed with prejudice.

## ORDER

And now, June 19, 2001, upon consideration of defendants' motion for summary judgment to Count I (breach of contract) of plaintiffs' second amended complaint, and all submissions related thereto, it is hereby

---

5. Plaintiffs do not provide any argument in support of their cross-motion for summary judgment. Moreover, as this court has concluded that defendants' internal policy created no obligation on defendants to pay claims within 30 days, or pay interest thereon this court hereby denies plaintiffs' cross-motion for summary judgment.

ordered that defendants' motion for summary judgment is granted, and plaintiffs' Count I is dismissed with prejudice. It is further ordered that plaintiffs' cross-motion for summary judgment is denied.